**Fernando MOLINA, et al., Plaintiffs,**

v.

**The MALLAH ORGANIZATION, INC., et al., Defendants.**

**No. 91 Civ. 1575 (WK).**

United States District Court, S.D. New York.

April 2, 1993.

---

420

Celia Goldwag Barenholtz, Alan Levine, Kronish, Lieb, Weiner & Hellman, New York City, for plaintiffs.

Bettina B. Plevan, Proskauer Rose Goetz & Mendelsohn, New York City, for Mallah Organization, et al., Carryl Mallah, Sheldon Mallah and Joel Mallah.

S. David Harrison, Lesser & Harrison, New York City, for Rapid Park.

David F. Jasinski, Jasinski and Bisceglie, Newark, NJ, for Rapid Park Industries, Inc., et al., Elizabeth Parking Co., Kevin Wolfe and Raymond Wolfe.

Neal Platt, Shwal & Platt, New York City, for Manhattan Parking, et al.

James LaRossa, LaRossa Mitchell & Ross, New York City, for Martin Meyers, Mack Parking, Carole Storage Corp. and Manhattan Parking Systems Corp.

Richard H. Maidman, New York City, for Samuel Lipman.

Elizer Cohen, New York City, for Manhattan Parking E. 12th Street Corp.

Brian D. Sullivan, Lord Day & Lord, Barret Smith, New York City, for Nominal Defendants Mac Victor, Simon Rogove, Bernard Ratshin, Daniel Stark, Milton Lewin, Brad Shey and Norman Goodfarb.

Fred S. Sommer, Arent Fox Kintner Plotkin & Kahn, Washington, DC, C. Stephen Heard, Jr., McGarrahan & Heard, New York City, for intervenor Metropolitan Garage Owners Ass'n, Inc.

Charles Haydon, Mark S. Frey, Dublirer, Haydon, Straci & Victor, New York City, for third-party defendants Garage Employees Union, Local 272, Eugene Bennett, Daniel J. Sullivan, Frederick Alston, Jr., Raul Coronado, I. Frank Gordon, Jr. and Jose Villarreal.

## REVISED OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

This is an action, filed on March 6, 1991, alleging derivative claims by employees standing in the shoes of Trustees of the Garage Employees Union Local 272 ("Union") Welfare and Pension Funds ("Funds") seeking contributions that allegedly should

have been paid into the Funds but never were, pursuant to ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145 and the Labor Management Relations Act, 29 U.S.C. § 185(a), and a direct claim for damages they and a class of similarly situated persons suffered directly as a result of employers interfering with their rights under the Funds in violation of ERISA § 1140. We have already addressed two published Opinions to this complex litigation, denying, except as to Count II, defendants' various motions to dismiss the complaint, *Molina v. Mallah* (S.D.N.Y.1992) 804 F.Supp. 504, and granting class certification with respect to plaintiffs' Count IV, *Molina v. Mallah* (S.D.N.Y.1992) 144 F.R.D. 37. Familiarity with those opinions is assumed.

In April 1992 the Mallah defendants ("Mallah") filed a three-count third-party action against the Union, certain Union representatives, and a number of Union-appointed trustees to the Funds. The complaint alleges: (I) that the Union and Union representatives defamed Mallah, which is a claim under state law; and (II) that under ERISA, Mallah has a right of contribution against the Union and Union Representatives based on their breach of their duty of fair representation by failing either to commence any grievance or other proceedings to challenge Mallah's failure to make contributions on behalf of plaintiffs or to attempt to collect such contributions or even union dues.[1] The Union and its named representatives move to dismiss the above counts on the basis of a variety of jurisdictional and pleading deficiencies. For the reasons that follow, the motion is granted and counts I and II dismissed, with leave, however, to replead within 40 days if Mallah is able to cure the defects we detail below.

1. Count III of the complaint is for contribution against the Union-appointed trustees, and is not challenged on this motion.

2. The claims must meet essentially the same test under Fed.Rule Civ.Pro. 13(g) if the contribution claim against the Union and Union representatives stand and the defamation claims are asserted as cross claims.

Mallah contends that even if we dismiss the contribution claims we could nonetheless assert ancillary jurisdiction over the state law defama-

## A. COUNT I

The gravamen of plaintiffs' original complaint is that defendants engaged in a scheme to prevent hundreds of covered employees from joining the Union and thus to evade making contributions to the Funds on their behalf. In this regard, the third-party complaint alleges at ¶ 9 that:

> As part of the Union's scheme to pressure and sabotage the business of the Mallah defendants, [the Union representatives] on behalf of the Union and within the scope of their duties, knowingly or recklessly, made numerous false and malicious statements about the Mallah defendants to their employees and others, including statements that: the Mallahs had defrauded their employees out of money and lied to them ..; their "boss is a thief who belongs in jail" ...; [a Mallah] is connected to organized crime ...; [they] failed to make contributions owed to the Funds ... even after the 1989 agreement ...; [they] engaged in various illegal acts ...; and [they can] acquire garages because "Shelly Mallah is a drug dealer" and is laundering money obtained from drug sales.

■ To permit us to assert supplemental jurisdiction over Mallah's purely state law defamation claims, the third-party complaint must allege facts "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367. That is, the claims must in effect arise from the same transaction or occurrence or common nucleus of operative fact that is the subject matter of plaintiff's action.[2] *See United Mine Workers v. Gibbs* (1966) 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.

■ Accepting the material facts alleged in the third-party complaint as true (*Branum v. Clark* (2d Cir.1991) 927 F.2d 698, 705), this

tion claims by requiring the joinder of the Union to the action as a necessary party. *See* Mallah Opp. Mem note 3. In so contending, Mallah apparently believes that we did not resolve the joinder question in our Opinion treating its motion to dismiss. *See* Mallah Memorandum in Opposition at note 3. This belief is erroneous. *See Molina,* 804 F.Supp. at 513 ("Mallah's motion to dismiss Count II of the complaint is granted; the remainder of their motion [is] denied.")

pleading is insufficient to allow us to conclude that they arise from the same transactions or occurrences that are the basis of the original plaintiffs' claims. Indeed, the asserted statements are listed with so little specificity as to when and in what context they were made that it is impossible for us to determine if they are in any way related to the scheme plaintiffs alleged in their complaint. For such a relation to exist, the statements must at least have occurred during the period when Mallah was not making the contributions plaintiffs' allege should have been made. Additionally, the statements cannot simply have been that no contributions were made, because that is acknowledged, but it must be alleged that they were not made as part of an illegal scheme to avoid so doing.[3] Therefore, Count I of the third-party complaint is dismissed.[4]

### B. COUNT II

■ Count II claims contribution from the Union and Union representatives based on the Union's responsibility for Mallah's having failed to pay contributions to the Funds. In this connection, Mallah alleged in ¶ 9 of the third-party complaint a "scheme" by the Union "to pressure and sabotage the business of Mallah," and in ¶¶ 13 and 14 that:

> the Union never commenced any grievance proceedings or other legal proceedings to challenge the Mallah Corporate defendants treatment of plaintiffs and other employees as noncovered employees; nor did it make any effort to recover Union dues or Fund contributions allegedly owing on their behalf.
>
> 14. ... the Union was obligated to advise [plaintiffs] about their rights to have Fund contributions made on their behalf and to file grievances and take other appropriate legal action to enforce those rights. To the extent that plaintiffs and others similarly situated were covered by the collective bargaining agreements, the Union breached its duty of fair representation by failing to do so.

In order to sustain the allegations in this count, we must answer a more technical question: can a fiduciary that has allegedly breached its duty claim contribution from a non-fiduciary?

■ The Court of Appeals in *Diduck v. Kaszycki & Sons Contractors, Inc.* (2d Cir. 1992) 974 F.2d 270 recently addressed just that question. In that action, which resulted from the non-payment during the construction of the Trump Tower on Fifth Avenue of contributions to Insurance Trust and Pension Funds on behalf of "off-the-books" non-union workers recently arrived from Poland, the defendant contractor (a fiduciary of the Funds) sought contribution from the Trump defendants (non-fiduciaries) based on their participation in the fiduciary breach. The Court noted that only one section of ERISA explicitly provides for non-fiduciary liability. *See id.* at 279–80. After considering *Massachusetts Mutual Life Ins. Co. v. Russell* (1985) 473 U.S. 134, 105 S.Ct. 3085, 87

---

**3.** This specificity is especially important in the instant case, which arose in the context of a labor dispute. Such situations are notoriously susceptible to hot heads and unpleasant accusations. However, statements made in the midst of such a conflict, while possibly defamatory, would not be sufficient to establish supplementary jurisdiction unless they related directly to the scheme alleged in the original plaintiffs' complaint. Thus while allegedly calling Shelly Mallah a drug dealer might well be actionable in a state court suit, that statement as set forth in the third-party complaint has nothing to do with the Mallah defendants' alleged scheme. To the extent such statements might have been made "[a]s part of the Union's scheme to pressure and sabotage the business of the Mallah defendants" (which allegation, without more, seems related only to the labor dispute), the third-party complaint must allege *some* connection between that scheme and the original plaintiffs' complaint. Given the Mallah defendants's assertion that their failure to contribute to the Funds was known and condoned by the Union, we have difficulty seeing how any defamatory statement could be related to a scheme in which the Union is claimed to have conspired. The mere fact that some of the same people are allegedly involved in both the scheme and labor negotiations does not create the necessary nexus.

**4.** We thus do not reach the Union's opposition based on the lack of specificity of the pleadings, except insofar as we set forth *infra* page 423 the kind of detail we would require should the Mallah defendants decide to replead this claim. In this regard, see Union Reply Mem. at 6 and *Reeves v. Continental Equities Corp. of America* (S.D.N.Y.1991) 767 F.Supp. 469 there cited. Nor do we address the question of whether *Nieman–Marcus Co. v. Lait* (S.D.N.Y.1952) 107 F.Supp. 96 would bar the corporate Mallah defendants from maintaining a defamation action.

L.Ed.2d 96, which it understood to warn that "because ERISA is a comprehensive and reticulated statute a court should be wary of reading into it remedies in addition to those set forth" (*Diduck,* at 279), the Court determined that "although no implied right of action exists under ERISA in favor of a participant against a non-fiduciary who knowingly participates in an ERISA-fiduciary's breach of duty, the question remains whether a federal common law right of action should be recognized." *Id.* at 280. The Court concluded that recognizing such a right of action would promote ERISA's goals, and held that "one who knowingly participates in an ERISA fiduciary's breach of duty is jointly and severally liable with the fiduciary for resulting damages under ERISA." *Id.* at 281. *See also Lowen v. Tower Asset Management, Inc.* (2d Cir.1987) 829 F.2d 1209, 1220 ("parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries").

Thus, assuming for the purposes of this motion that Mallah is a Funds fiduciary, the complaint must as an initial matter allege a knowing participation by the Union and the Union representatives in Mallah's fiduciary breach, that is, their non-contribution to the Funds. The allegations in ¶¶ 13 and 14, however, say nothing from which we could infer the Union's knowing participation in a scheme that caused a breach of fiduciary duty. Indeed, Mallah alleges only actions by the Union designed to harass them, or the Union's failure to act to prevent the successful carrying out of their alleged scheme not to contribute on behalf of plaintiffs.[5] The allegations as now stated do not in any way suggest the sort complicity in a fiduciary breach that *Diduck*'s knowing participation standard would require, and the complaint thus fails to state a contribution claim.

Accordingly, the motion to dismiss Counts I and II is granted. Nonetheless, we give leave to Mallah to replead those claims with-

in 40 days consistent with our opinion. Thus they may replead the defamation claim only if they specify allegedly defamatory statements that occurred during the period when plaintiffs allege contributions should have been made to the Funds and were not—that is prior to February 5, 1989 or during the period thereafter when previously uncovered employees were being signed up—and only if the alleged statements are clearly related not just to Mallah's failure to contribute, but to some allegation that not doing so was the result of a scheme or other wrongdoing on their part. A repleaded contribution claim must, with respect to the derivative counts, contain specific allegations of the third-party defendants' knowing participation in Mallah's scheme to evade making required contributions, and, with respect to the class claim, specific allegations of the third-party defendants' knowing participation in interfering with plaintiffs' rights under the Funds.

SO ORDERED.

---

5. We observe, for example, that the Union's alleged failure to commence grievance proceedings against defendants, or seek to recover unpaid Funds' contributions (which was not alleged to have been the Union's responsibility), is entirely consistent with plaintiffs' description of defendants' plan not to make contributions on their behalf by hiding them from the Union. Similarly, the Union's alleged breach of its duty of fair representation to plaintiffs assume what is not alleged in the Mallah defendants's complaint: Union knowledge and participation in the failure to make contributions on behalf of plaintiffs.