BLUE DANE SIMMENTAL CORPORATION, Roland Nuss, Ron Vlasin, and Dennis Behrhorst, Plaintiffs,

v.

AMERICAN SIMMENTAL ASSOCIATION, and Tom Risinger, Defendants and Counterclaimants,

v.

Paul COLE, et al., Counterclaim Defendants.

No. 4:CV94–3116.

United States District Court, D. Nebraska.

Feb. 7, 1997.

Steven Burns, Lincoln, NE, Robert T. Grimit, Lincoln, NE, Eric Kruger, Omaha, NE, Charles F. Gotch, Omaha, NE, for Plaintiffs.

Jefferson Downing, Lincoln, NE, V. Gene Summerlin and R. Murray Ogborn, Lincoln, NE, for Defendants.

Danene Tushar, Lincoln, NE, Terry Wittler, Lincoln, NE, for Defendants on Counterclaims.

## MEMORANDUM AND ORDER

KOPF, District Judge.

After dismissal of the RICO counterclaims, there remains the question of whether I should dismiss the state law counterclaims pursuant to 28 U.S.C. § 1367(a) or (c). I carefully considered this question after reviewing the supplemental briefs and evidence. Pursuant to section 1367(a), I shall dismiss the state law counterclaims for lack of subject matter jurisdiction because (a) they are not independently supported by federal-question or diversity-of-citizenship jurisdiction, and (b) when compared with Plaintiffs' claims, they do not arise out of the same case or controversy under Article III of the Constitution. I alternatively find that even if jurisdiction exists under section 1367(a), I should decline to exercise jurisdiction under the provisions of section 1367(c)(1), (2), and (4).

United States Magistrate Judge David L. Piester has advised me that he has scheduled a settlement conference in this case. Notwithstanding the rulings I make today, judgment will be deferred pending conclusion of that settlement conference.

### I. Background

It is necessary to have a complete understanding of the complaint, the counterclaims, and the procedural history of this case. Once this background is outlined, the appropriate legal analysis can be provided.

### A. The Complaint

BLUE DANE SIMMENTAL CORPORATION (Blue Dane), ROLAND NUSS (Nuss), RON VLASIN (Vlasin), and DENNIS BEHRHORST (Behrhorst) sued AMERICAN SIMMENTAL ASSOCIATION (ASA), TOM

RISINGER (Risinger), and various unknown people denominated JOHN DOE(s). Blue Dane is a Texas corporation. Nuss is a resident of Montana; Vlasin, a resident of Nebraska; and Behrhorst, a resident of Iowa. ASA is a Montana corporation. Risinger is a Texas resident.

The complaint in this case states that on April 15, 1992, the defendants improperly registered two bulls belonging to Risinger as full-blooded Simmental cattle when the bulls were not in fact full-blooded specimens of the breed. (Filing 16, ¶¶ 37–39.) Plaintiffs contended the improper registration of these bulls and related acts: (1) violated RICO (18 U.S.C. §§ 1962(c) & (d)) (*id.* at 7); (2) violated federal antitrust laws (15 U.S.C. §§ 1, 4(a)) (*id.* at 17); (3) violated the Lanham Act (15 U.S.C. § 1125) (*id.* at 19); and (4) amounted to negligence (*id.* at 20). Plaintiffs sought damages against each named defendant on all four theories of recovery.

The first three theories of recovery were predicated upon the court's federal-question jurisdiction, (28 U.S.C. § 1331), and various specific federal statutes (18 U.S.C. § 1964(c) and 15 U.S.C. § 1121). The negligence theory was predicated upon the court's supplemental jurisdiction, (28 U.S.C. § 1367), although Plaintiffs did not specify which state law was implicated.

### B. The Counterclaims

Two counterclaims were filed and it is necessary to examine each separately.

#### 1. ASA Counterclaim

ASA filed a counterclaim, (Filing 92), asserting two theories of recovery. The first theory of recovery was under RICO, (*id.* at 12), while the second was a libel action under Montana law (*id.* at 16). The first theory of recovery was predicated on the court's federal-question jurisdiction, (28 U.S.C. § 1331), and the RICO jurisdictional statute (18 U.S.C. § 1964(c)). The second theory of recovery was based upon the court's supplemental jurisdiction (28 U.S.C. § 1367).

Named as counterclaim defendants were the following new parties to this action: (1)

CONCERNED SIMMENTAL BREEDERS (CSB), an unincorporated association doing business in all fifty states; (2) GIANLUCCA BRENNI (G.Brenni), a resident of Texas; (3) DON COLE (D.Cole), a resident of Texas;[1] (4) PAUL COLE (P. Cole), a resident of Arkansas; (5) JOHN CAVINESS (Caviness), a resident of Missouri; (6) JPB INDUSTRIES, INC. (JPB), a corporation with its principal place of business in Missouri; and (7) IOWA RIVER SIMMENTALS, LTD. (Iowa River), a business of unspecified type with its principal place of business in Iowa. Plaintiffs were also named as counterclaim defendants; that is, Blue Dane (a Texas corporation), Nuss (a Montana resident), Vlasin (a Nebraska resident), and Behrhorst (an Iowa resident) were sued in the counterclaim along with the new parties.

ASA sought damages against all counterclaim defendants on both theories of recovery. The essence of both theories of recovery was that in September, 1994, and January, 1995, the counterclaim-defendants mailed false statements to third parties. Among other things, the publications were allegedly false because: (1) the statements falsely attacked ASA and various ASA officers, suggesting, for example, that ASA had been sued for bid rigging or that a sexual-harassment lawsuit was brought against ASA's general counsel; and (2) the statements falsely claimed ASA had improperly registered Risinger's bulls as full-blooded Simmental cattle.

#### 2. Risinger Counterclaim

Risinger also filed a counterclaim, (Filing 137), asserting four theories of recovery: (1) a RICO claim (*id.* at 11); (2) a per se slander claim under Texas law (*id.* at 14); (3) a product disparagement claim under Texas law (*Id.* at 15); and (4) a claim of intentional interference with a business relationship under Texas law (*id.*) Risinger named Plaintiffs as counterclaim defendants. He also added as counterclaim defendants the same new parties ASA had sued.

---

**1.** Because D. Cole later sought protection under the bankruptcy laws, the case against him was dismissed without prejudice. (Filings 151, 152.)

Risinger sought damages against all counterclaim defendants on all theories of recovery. The essence of all of Risinger's theories was that in February, April, July (or August), and September, 1994, the counterclaim defendants mailed or circulated false statements about Risinger and the registration of his bulls. Risinger asserted the counterclaim defendants falsely claimed he improperly registered the bulls as full-blooded cattle when he knew they were not full-blooded animals.

The jurisdictional basis for the RICO claim was this court's general federal-question jurisdiction, (28 U.S.C. § 1331), and the RICO jurisdiction statute (18 U.S.C. § 1964(c)). Risinger did not specify the jurisdictional basis for his state law claims, but given the absence of complete diversity of citizenship, jurisdiction was apparently predicated upon this court's supplemental jurisdiction.

### C. Subsequent History

With the agreement of ASA and Risinger, I dismissed the RICO counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because it was apparent the counterclaims were not then independently supported by general or specific federal-question or diversity-of-citizenship jurisdiction, and because I was dissatisfied with the initial briefs on the question of supplemental jurisdiction, I ordered all parties to address the question of whether this court had jurisdiction over the counterclaims under section 1367(a), and if so, whether this court should decline to exercise that jurisdiction under section 1367(c).

The parties have now responded. The counterclaim defendants each agree the state

law counterclaims should be dismissed. ASA and Risinger oppose their dismissal.

Furthermore, counsel for JPB has submitted evidence, (Filing 187), that some or all of the plaintiffs here filed suit against ASA and others in Montana state court. (*Id.*, Ex. A.) The relief sought was dissolution of ASA. After a bench trial, the Montana court ruled on January 3, 1997, that Plaintiffs' action against ASA for dissolution should be dismissed. The court reasoned that dismissal was required because registration of Risinger's bulls did not amount to "illegal, oppressive, or fraudulent" conduct under Montana corporation law.

The evidence also reveals that Risinger filed a suit in Texas state court very similar to his state law counterclaim here. (Filing 187, Ex. B.) Nine of the counterclaim defendants are also named defendants in the Texas litigation, which is still pending.

### II. Law

It is undisputed that the counterclaims are no longer independently supported by general or specific federal-question jurisdiction and that there is no diversity-of-citizenship jurisdiction. The question thus becomes whether this court has subject matter jurisdiction over the remaining state law counterclaims under section 1367(a),[2] and if so, whether the court ought to decline to exercise that jurisdiction under section 1367(c).[3] I shall now resolve those issues.

### A. Subject Matter Jurisdiction

This court has subject matter jurisdiction over the state law counterclaims if those claims "are so related to the claims in the action within such original jurisdiction that they form a part of the *same case or contro-*

---

**2.** 28 U.S.C. § 1367(a) states:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**3.** 28 U.S.C. § 1367(c) states:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*versy* under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added). As applied to this case, and oversimplified for the sake of clarity, the statute means the following:

> If the defendants' state law counterclaims and the plaintiffs' claims are sufficiently related, this court has the power to hear the state law counterclaims although this court lacks the power to hear those claims if they were brought independently.

The important question is, of course, whether there is a sufficient relationship between the counterclaims and the main claims in this case. I shall answer that question next.

### 1. History of "Ancillary" Jurisdiction Over Counterclaims

In order to properly apply section 1367(a), one must understand the history of "ancillary jurisdiction" over counterclaims.

Before the adoption of section 1367(a), a federal court had "ancillary" jurisdiction over a counterclaim if the counterclaim was "compulsory" under Rule 13(a). 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1414, at 99 (2d ed. 1990) ("A Rule 13(a) compulsory counterclaim falls within the ancillary jurisdiction of the court and therefore does not require an independent basis of federal jurisdiction.") (footnote omitted). A counterclaim is "compulsory" under Rule 13(a) "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R.Civ.P. 13(a).

The "underlying policy reason" for finding federal jurisdiction over a compulsory counterclaim "is obvious." 6 Charles Alan Wright , Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1414, at 104 (2d ed.1990). The "major purpose" behind this policy was "to promote judicial economy by allowing the adjudication of related claims in a single action." *Id.* (footnote omitted). Therefore, "since a Rule 13(a) counterclaim is closely related to the opposing party's claim, it clearly is in the interest

of trial convenience to allow the counterclaim to be adjudicated under the scope of the court's ancillary jurisdiction." *Id.* (footnote omitted).

On the other hand, the "federal practice is not to apply the ancillary jurisdiction notion to counterclaims that are permissive under Rule 13(b)." *Id.* at 106 (1990) (footnote omitted) A counterclaim is "permissive" when it does not arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b).

The refusal to extend "ancillary jurisdiction" to permissive counterclaims arose because it was "improper to use an overly broad application of Rule 13(a) to justify the expansion of federal subject matter jurisdiction, the scope of which is limited by the Constitution and statute." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1414, at 105–06 (2d ed.1990) (footnote omitted). This position was so strongly held that federal courts discounted "the attractiveness" of the argument that avoidance of piecemeal litigation justified the extension of "ancillary" jurisdiction to permissive counterclaims just as it did to compulsory counterclaims. *Id.* § 1422, at 170. "[T]he federal courts have adopted the contrary view, and consistently hold that permissive counterclaims must be supported by independent grounds of federal jurisdiction." *Id.* (footnote omitted)

The modern view of the United States Supreme Court regarding when a federal court could or should hear a state law claim was set out in the Court's 1966 decision in *United Mine Workers v. Gibbs,* 383 U.S. 715, 728–29, 86 S.Ct. 1130, 1140–41, 16 L.Ed.2d 218 (1966) (holding, among other things, that the trial court properly retained jurisdiction of the plaintiff's pendent state labor law claim after the plaintiff's federal labor law claim was dismissed). This opinion described the limits of federal constitutional power to hear state claims, and it also set forth examples of when a trial court should refuse to exercise the constitutional power it may possess.

According to *Gibbs,* a federal trial court had the constitutional power to hear both federal and state law claims if "the relation-

ship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' " *Id.* at 725, 86 S.Ct. at 1138 (footnote omitted). The requisite relationship existed when the federal and nonfederal claims "derive from a common nucleus of operative fact" and are such that a party "would ordinarily be expected to try them all in one judicial proceeding." *Id.*

*Gibbs* added, however, that even where a federal court has the constitutional power to hear a nonfederal claim, the trial court retained significant discretion to refuse to exercise that power. *Id.* at 726–27, 86 S.Ct. at 1139–40. Overall, the trial court was to balance considerations of judicial economy, convenience, and fairness to litigants. *Id.* at 726, 86 S.Ct. at 1139. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* (footnote omitted).

The Court gave examples of situations where a trial court might wish to decline to hear a state law claim. For example, a trial court should ordinarily dismiss the state law claim if the federal claim is dismissed as jurisdictionally insufficient. *Id.* If state issues substantially predominate, whether in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought, such claims may be dismissed. *Id.* at 726–27, 86 S.Ct. at 1139–40. Likewise, trial considerations, such as jury confusion resulting from divergent legal theories, might warrant dismissal of the state law claims. *Id.* at 727, 86 S.Ct. at 1139–40.

Technically, *Gibbs* involved a "pendent" claim rather than an "ancillary" claim like the counterclaims at issue now. Nevertheless, as it related to the constitutional power to hear a claim lacking an independent federal jurisdictional predicate, *Gibbs* was subsequently applied by the Supreme Court to "ancillary" jurisdiction disputes. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 371–73, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978).

*Kroger* involved a state law tort action brought to federal court under the diversity statute. The diverse defendant sued a third-party defendant under Federal Rule of Civil Procedure 14(a) claiming the third-party defendant was liable for injury to the plaintiff and, as a result, should indemnify the defendant. As Rule 14 permitted her to do, the plaintiff then amended the complaint to assert an additional claim against the third-party defendant. At that point, the plaintiff and third-party defendant were erroneously believed to have diverse citizenship. Summary judgment was entered for the diverse defendant and against the plaintiff. During trial it was learned that the third-party defendant maintained its principal place of business in the same state as the plaintiff. This development left the plaintiff and third-party defendant as residents of the same state and the only parties to the action.

The plaintiff contended her "ancillary" claim against the third-party defendant arose from the same "core of operative facts" that produced her jurisdictionally sufficient claim against the defendant. As a result, she argued the trial court had the constitutional power under *Gibbs* to hear the claim against the third-party defendant because the court had the power under the diversity statute to hear the claim against the defendant.

The Court held that while the trial court may have had the constitutional power to hear the plaintiff's claim against the nondiverse third-party defendant under the "common nucleus of operative fact" test set forth in *Gibbs,* ancillary jurisdiction should not be extended to such a situation because Congress did not intend the diversity statute, which empowered the trial court to act in the first place, to give the trial court jurisdiction without complete diversity. As a result, the Court would not allow the plaintiff to do indirectly what she could not have done directly.

Thus, while the Court found no "ancillary" jurisdiction in *Kroger,* the *Gibbs* test on the limits of constitutional power was applied by the Court to the "ancillary" jurisdiction context. As the *Kroger* Court stated, "pendent" and "ancillary" jurisdiction "are two species of the same generic problem: [u]nder what circumstances may a federal court hear and

decide a state-law claim arising between citizens of the same State." *Id.* at 370, 98 S.Ct. at 2401 (footnote omitted). It was therefore sensible to apply the *Gibbs* test to an ancillary jurisdiction dispute even though the test was developed in the pendent jurisdiction context. *See* 13 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3523, at 100 (2d ed.1984) (discussing *Gibbs* in the context of ancillary jurisdiction and suggesting that *Kroger* used the *Gibbs* "common nucleus of operative fact" test to define the constitutional limits of ancillary jurisdiction).

In summary, before the adoption of section 1367(a), "if a federal court has jurisdiction over plaintiff's claim, it also will have jurisdiction over a [compulsory] counterclaim that arises from the same transaction or occurrence." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1414, at 102–03 (2d ed.1990) (footnote omitted). If the counterclaim was merely permissive, the federal court would not have jurisdiction absent an independent jurisdictional allegation. *Id.* at 106. It was important to make distinctions between "compulsory" and "permissive" counterclaims because "the federal rule goal of settling the various aspects of a particular dispute in one action," *id.* at 106, did not "justify the expansion of federal subject matter jurisdiction, the scope of which is limited by the Constitution and statute." *Id.* at 105–06 (footnote omitted).

### 2. Origins of Section 1367(a)

"The origins of" section 1367(a) "lay in the Supreme Court's decision in *Finley v. United States.*" 13 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3523, at 47 (Supp.1996) (discussing section 1367(a) and *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (footnote omitted)).

*Finley* dealt with "pendent-party" jurisdiction. 490 U.S. at 549, 109 S.Ct. at 2006–07. The Court held that where the federal court had jurisdiction under the Federal Tort Claims Act against the United States, the plaintiff could not assert a state law claim against a city and a utility company without an independent federal jurisdictional basis.

*Id.* at 546–56, 109 S.Ct. at 2005–11. The Court went on to add that "with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.* at 549, 109 S.Ct. at 2007. However, the Court concluded by inviting Congress to change the *Finley* rule regarding "pendent-party" jurisdiction: "Whatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress." *Id.* at 556, 109 S.Ct. at 2010.

In 1990, "Congress responded with Section 1367" by codifying "the doctrines of ancillary and pendent jurisdiction as they existed prior to *Finley*" and giving these concepts "the collective name of 'supplemental jurisdiction.'" 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523, at 48 (Supp.1996). To put it bluntly, the purpose of this legislation was to "'overrule the restrictions on supplemental jurisdiction erected by *Finley.*'" 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3567.3, at 49 (Supp. 1996) (citation omitted). Congress achieved this by giving "federal courts supplemental jurisdiction to the limits Article III of the Constitution permits, and in this way ratifies and incorporates the constitutional analysis the Supreme Court made in the *Gibbs* case." *Id.* (footnote omitted).

What impact did section 1367(a) have upon "ancillary" (now supplemental) jurisdiction regarding counterclaims? The answer is probably "none," 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1414, at 7 (Supp. 1996), because the statutory standard "same case or controversy" used in section 1367(a) "would embrace transactionally-related counterclaims." *Id.* As a result, scholars believe that "all the case law interpreting the boundaries for ancillary jurisdiction over Rule 13 counterclaims thus remains pertinent and controlling." *Id.* Succinctly put, "permissive counterclaims continue to require an independent jurisdictional basis," 13 Charles Alan Wright, Arthur R. Miller & Edward H. Coo-

per, *Federal Practice and Procedure* § 3523, at 49 (Supp.1996), and "§ 1367 has not changed [the] pre-existing rule." *Id.* at 62 n. 57.25 (citation omitted)

I conclude that these professors are correct in their assessment, that is, section 1367(a) did not change the proper method to decide whether a court has subject matter jurisdiction over a state law counterclaim, and that method requires a determination of whether the counterclaim is "compulsory" or "permissive." There is some room for debate on this point, however, and I will discuss this issue next.

### 3. Relevance of "Compulsory" vs. "Permissive" Distinction

Risinger asserts (at least in his initial brief) that his counterclaim is "compulsory" and seems to concede that the "compulsory" versus "permissive" distinction remains relevant as a tool for jurisdictional analysis. ASA, on the other hand, argues that the "compulsory" versus "permissive" distinction is no longer important given the adoption of section 1367(a).[4] I must resolve this question.

Two Seventh Circuit decisions have seemingly confused the law regarding whether the "compulsory" and "permissive" counterclaim distinction remains a viable tool for jurisdictional analysis. I shall examine those cases.

In the first case, the Seventh Circuit stated that "[a] federal court has supplemental jurisdiction over compulsory counterclaims" and " '[a]ncilliary jurisdiction' became 'supplemental jurisdiction' on December 1, 1990." *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir.1991). In the next sentence the court observed that permissive counterclaims "require their own jurisdictional basis." *Id.* (citations omitted). These statements were entirely consistent with the settled understanding of the law before section 1367 was adopted, and they seemed to confirm the view of scholars that section

1367 had not changed the proper jurisdictional analysis regarding counterclaims. *See* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §. 3523, at 62 n. 57.25 (Supp.1996) (citing *Unique Concepts* for the proposition that "§ 1367 has not changed [the] pre-existing rule").

Nevertheless, in 1996, the Seventh Circuit decided the case of *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996), holding that a district court had jurisdiction under section 1367(a) regarding a counterclaim asserted by an assignee of a lessor for lease-cancellation payments. The counterclaim was interposed in an action brought by plaintiff-lessees contending the handling of the lease violated the Federal Consumer Leasing Act. According to the Seventh Circuit, the district court had jurisdiction over the counterclaim because the parties, the lease, the clauses in the lease, and the issue of cancellation of the lease were at issue in both the jurisdictionally sufficient main claim and the counterclaim. This holding is unremarkable.

Yet the court added a confusing point. It cautioned against "read[ing] too much into *Unique Concepts.*" *Id.* at 385. The opinion noted that section 1367(a) had "extended the scope of supplemental jurisdiction ... to the limits of Article III." *Id.* Consequently, rather than use the "compulsory" versus "permissive" language, the court suggested "[n]ow that Congress has codified the supplemental jurisdiction in § 1367(a), courts should use the language of the statute to define the extent of their powers." *Id.* However, the court did not explicitly state that section 1367(a) expanded the scope of subject matter jurisdiction for permissive counterclaims beyond what had been the consistent understanding before section 1367(a) was adopted.

Despite the uncertainty created by these cases, I am persuaded the "compulsory" and

---

4. If its counterclaim is "compulsory," ASA may have already lost it for failure to assert it in the Montana action that has now gone to judgment. Montana has adopted the language of Federal Rule of Civil Procedure 13. Mont. R. Civ. P. 13 (1996) (WL, "Mt–Rules" database). Montana Rule of Civil Procedure 13(a) requires the asser-

tion of "compulsory" counterclaims, and if not asserted, a party may forfeit the claim. As a result, ASA has good reason to argue in this case that its counterclaim is permissive, but that the "permissive" versus "compulsory" distinction is no longer relevant for federal jurisdictional purposes.

"permissive" distinction remains a good tool for deciding questions of subject matter jurisdiction under section 1367(a). I reached this conclusion for three reasons.

First, the language of the *Gibbs* test, the language of Rule 13, and the language of section 1367(a) are all similar, and the inquiry required by that language is the same. The *Gibbs* test turns on whether the jurisdictionally sufficient claim and the counterclaim *"derive from a common nucleus of operative fact"* and are such that the parties *"would ordinarily be expected to try them all in one judicial proceeding."* Rule 13(a) similarly requires a court to determine whether the counterclaims arise out of *"the transaction or occurrence that is the subject matter of the opposing party's claim."* In a similar vein, section 1367(a) compels a court to determine whether the counterclaims *"are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."*

As a matter of historical fact, the report of the Federal Courts Study Committee, which was produced by "a distinguished group appointed pursuant to an Act of Congress" and upon which Congress relied when enacting section 1367, 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3567.3, at 49 (Supp.1996), "recommend[ed] that Congress expressly authorize federal courts to hear any claim arising out of the same *'transaction or occurrence'* as a claim within federal jurisdiction." *Id.* at 51–52 n. 12 (quoting Fed. Cts. Study Comm. Rep. at 47–48 (1990) (emphasis added)). The "transaction or occurrence" test is, of course, derived from the compulsory counterclaim provisions of Rule 13(a). Consequently, ASA and Risinger cannot plausibly argue the Rule 13 standard is somehow too narrow a tool for jurisdictional analysis.

As a logical matter, both the words and the important analytical question are essentially the same no matter whether one consults *Gibbs*, Rule 13, or section 1367(a): Are the main claims over which the court has subject matter jurisdiction and the state law counterclaim sufficiently related to be considered one dispute?

This inquiry has always required a federal court to balance two competing policies. On one hand, the court should honor the policy of avoiding piecemeal litigation by encouraging the joinder of claims. On the other hand, Article III of the Constitution, which prescribes a limited role for federal courts over state law claims, demands equal solicitude. There is nothing in the words of section 1367(a) that changes this balancing process in the context of counterclaims.

Second, the reasons for adopting section 1367(a) do not suggest a congressional desire to change the methodology for determining subject matter jurisdiction over counterclaims. On the contrary, as noted earlier, section 1367(a) was adopted primarily to overrule *Finley* and codify Gibbs. *See also Hart v. Clayton–Parker & Assocs., Inc.,* 869 F.Supp. 774, 776 (D.Ariz.1994) (citing Dennis McLaughlin, *The Federal Supplemental Jurisdiction Statute—a Constitutional and Statutory Analysis,* 24 Ariz. St. L.J. 849, 922 (1992), for the proposition that "section 1367 will effect no change in the uniform practice of denying supplemental jurisdiction to unrelated permissive counterclaims").

Third, without direction from the circuit court, I should not reject what has been the previously settled analytical framework in this circuit for determining the limits of federal court power over state law counterclaims. This framework has long depended on the distinction between "compulsory" and "permissive" counterclaims. *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7,* 747 F.2d 1195, 1197 (8th Cir.1984) ("a permissive counterclaim does require a basis of jurisdiction independent from that supporting the main claim," and the district court lacked jurisdiction over a permissive claim that failed to allege such an independent basis).

In summary, pre–1990 counterclaim case law focusing on Rule 13 and the "compulsory" versus "permissive" distinction remains as relevant and instructive today as it was before section 1367(a) was adopted. Using pre–1990 case law to ascertain whether a federal court has subject matter jurisdiction

over a counterclaim is appropriate despite the enactment of section 1367(a).

### 4. The Four Tests

■ Having examined the history of section 1367(a) and decided the "compulsory" and "permissive" counterclaim distinction remains viable as a tool for jurisdictional analysis, I can now restate the question presented: Applying section 1367(a), and appreciating both the desirability of avoiding piecemeal litigation and the limited role of the federal courts in the resolution of state law disputes, are the state law counterclaims sufficiently related to Plaintiffs' jurisdictionally sufficient claims that all such claims are the "same case or controversy?"

The United States Court of Appeals for the Eighth Circuit uses four tests to determine whether a counterclaim arises out of the same transaction or occurrence under Rule 13(a). *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir.), cert. denied, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). *See also Tullos v. Parks*, 915 F.2d 1192, 1195 & n. 8 (8th Cir. 1990) (discussing the tests and applying the logical relationship test); *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1136 n. 5 (8th Cir.1981) (discussing the tests and applying the logical relationship test); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1410, at 52–65 (2d ed.1990) (discussing the tests)

■ The four tests are:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3) Will substantially the same evidence support or refute the plaintiff's claim as well as the defendant's counterclaim?

4) Is there any logical relationship between the claim and the counterclaim? *Cochrane*, 596 F.2d at 264. I will apply these tests in the following portions of this memorandum.

### a. Largely Similar Factual and Legal Issues

As to the first test, the issues of fact and law raised by Plaintiffs' claim are not largely the same as the issues of fact and law raised by the counterclaims. It will be helpful to break this analysis into two parts, factual and legal.

■ The factual question of whether the bulls were improperly registered is common to both the main claim and the counterclaims. However, this is the only factual similarity, and such a similarity is not enough to conclude that all claims are derived from "a common nucleus of operative fact." [5]

For example, the important date for Plaintiffs' claim is April 15, 1992, while the important dates for the counterclaims are in 1994 and 1995. In addition, critical facts regarding issues such as knowledge, intent, and culpability—what Risinger and ASA knew, intended, and considered when the bulls were registered and what the counterclaim defendants knew, intended, and considered when they made the alleged false statements—are quite different. Moreover, the ASA counterclaim raises factual issues such as a sexual harassment suit entirely unrelated to the registration question presented in the main claim. Still further, the parties whose conduct must be evaluated from a factual point of view are not largely the same. The counterclaims require examination of the conduct of six parties who have no apparent involvement in the main claim.

Similarly, the legal issues involved in the main claim are very different from those

**5.** I agree with ASA and Risinger that a "loose factual connection" can be enough. *See, e.g.,* 13B Charles Alan Wright et al., *Federal Practice and Procedure* § 3567.1, at 117 (2d ed.1984). However, words like "loose factual connection" provide little guidance as to what constitutes a *sufficient* connection. Using the *Gibbs* formulation, the ultimate inquiry is whether the facts in the main claim and counterclaim are both *"com-* *mon"* and *"operative."* A "loose connection" between non-operative facts is never enough. Likewise, a "loose connection" between some operative facts, without a connection to other operative facts, may or may not be enough. The four tests discussed in the text provide a time-honored framework for determining the sufficiency of the connection.

presented in the counterclaims. The main claim asserts federal legal theories under RICO, the antitrust laws, the Lanham Act, and a simple state law negligence claim. In contrast, one counterclaim asserts a libel claim under Montana law, while the other asserts a per se slander claim, a product disparagement claim, and a claim of intentional interference with a business relationship under Texas law.

### b. Res Judicata

Without a compulsory counterclaim rule, the common law doctrine of res judicata would not bar ASA and Risinger from bringing their counterclaims in a subsequent suit. In order for res judicata to apply in this circuit and in the forum state (Nebraska), the "same cause of action" must be involved in both cases. *County of Boyd v. U.S. Ecology, Inc.*, 858 F.Supp. 960, 966–68 (D.Neb.1994) (under federal and Nebraska law, "[t]he doctrine of res judicata bars claims where one suit follows another if the same cause of action is involved in all cases"), *aff'd*, 48 F.3d 359 (8th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

When one compares the main claim and counterclaims, it is easy to see the claims do not flow "from one factual situation." Id. at 361. In order for ASA and Risinger to succeed, they have to prove not only that the registration of the bulls was proper, which is the issue in the main claim, but also that some two years later the counterclaim defendants slandered, libeled, disparaged, or interfered with them by uttering statements about the registration issue. Moreover, in the case of ASA, the counterclaim is based in part upon incidents that have absolutely no relationship to the bull-registration issue. Simply stated, the "facts needed to prove the later case are [not] the same as those needed to prove the earlier case." *County of Boyd*, 48 F.3d at 361. As a result, res judicata would not bar assertion of the counterclaims.

Consequently, for jurisdictional purposes, "the claims are [not] such that [the parties] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. *See* 13B Charles

Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3567.1, at 116 (2d ed.1984) (observing that when the *Gibbs* court used the "one judicial proceeding" language, "it is clear" the Court was "referring to what res judicata would require if the claims were all federally created or all state created") (footnote omitted).

### c. Substantially the Same Evidence

The evidence to prove or refute Plaintiffs' claim and the evidence to prove or refute the counterclaims will not be substantially the same. As noted earlier, in order for ASA and Risinger to prevail on the counterclaims, they have to prove not only the propriety of the bulls' registration, which is also at issue in Plaintiffs' claims, but also that (1) statements relating to the registration were in fact uttered approximately two years later, and (2) the statements were of such a character as to warrant liability.

Moreover, much of the counterclaim evidence will focus on the conduct of the six counterclaim defendants who have no apparent involvement with the registration claim. In addition, part of ASA's counterclaim evidence will of necessity relate to other issues such as the sexual harassment suit and will bear no relationship whatever to the registration evidence.

Consequently, while similar evidence on the registration issue may be adduced regarding the main claim and counterclaims, the evidence viewed as a whole will not be "substantially the same" in proving or refuting the main claim and counterclaims.

I pause here to address the argument advanced by ASA and Risinger that if they prevail on the defense to the main claim by proving the bulls' registration was proper, they also prevail on their counterclaims. They argue that the really important evidence is identical regarding the main claim and counterclaims.[6]

The premise of this argument is flawed. Success on the counterclaims will require proof of conduct by the counterclaim defen-

---

**6.** This, of course, ignores the fact that the ASA counterclaim is predicated in part upon alleged false statements that have nothing to do with registration of Risinger's bulls.

dants completely unrelated to whether the bulls were properly registered.

For example, to prove "slander per se" under Texas law, Risinger must prove not only that the bulls were ·properly registered but also that the counterclaim defendants uttered statements that "unambiguously and falsely impute[d] criminal" or similar wrongful conduct to Risinger. *Bennett v. Computer Assocs. Int'l, Inc.,* 932 S.W.2d 197, 200 (Tex.Ct.App.1996) (citation omitted).. Likewise, to prove libel under Montana law, ASA would be required to prove not only that the registration was proper but that the statements about registration were "false," "unprivileged," and "expose[d] [ASA] to hatred, contempt, ridicule, or obloquy," or "cause[d] [ASA] to be shunned or avoided," or "ha[d] a tendency to injure [ASA] in [its] occupation." Mont.Code Ann. § 27–1–802 (1995).

### d. Logical Relationship

The logical relationship test is at once the most used and the least precise. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1410, at 61–65 (2d ed.1990). This test requires a determination of "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem,* 571 F.2d 119, 123 (2nd Cir. 1978) (applying the logical relationship test and holding that a defamation counterclaim based on the filing of the complaint itself, plus a subsequent claim of libel, was correctly dismissed as "permissive" and lacking an independent jurisdictional basis).

On balance, there is not a sufficient "logical relationship" between Plaintiffs' claim, which focuses on registration of bulls in 1992, and the counterclaims of ASA and Risinger, which focus on libel, slander, and the like in 1994 and 1995. I reached this conclusion because: (1) there is a significant time span between the accrual of the two sets of claims; (2) critical facts relating to knowledge, intent, and culpability between the two sets of claims are very different; (3) the number of parties whose conduct must be examined to resolve the counterclaims is much greater than the number of parties whose conduct must be examined to resolve Plaintiffs' claim; (4) the legal issues between the main claim and counterclaims are materially different; and (5) success on the counterclaims will require a large amount of proof that need not be considered during trial of the main claim. *Howell v. Town of Fairfield,* 123 F.R.D. 429, 431 (D.Conn.1988) (applying the logical relationship test and holding that a defamation counterclaim, interposed against an alleged constitutional tort, was permissive, not compulsory, and subject to dismissal given the absence of an independent jurisdictional foundation; stating that "apart from presumed common questions of truth and falsity" concerning the constitutional tort, there were "a host" of "distinct and particular defamation issues, foreign to [the main claim]"). *See also Molina v. Mallah Org., Inc.,* 817 F.Supp. 419, 421–22 (S.D.N.Y.1993) (state law third-party defamation claim asserted by employer against third-party· defendant union officials regarding alleged false statement implicating the employer in fraud regarding contributions to an employee benefit plan did not arise out of the same ·transaction or occurrence as employees' suit against employer for failing to make contributions; court lacked supplemental jurisdiction under section 1367). *Cf. Appletree v. City of Hartford,* 555 F.Supp. 224, 229–30 (D.Conn.1983) (applying the logical relationship test and holding that a libel counterclaim was compulsory when the alleged libel was "contemporaneous with the transaction complained of in the original dispute").

### 5. Summary

Applying section 1367(a), and appreciating both the desirability of avoiding piecemeal litigation and the limited role of the federal courts in the resolution of state law disputes, I find and conclude the state law counterclaims are not sufficiently related to Plaintiffs' jurisdictionally sufficient claim that all such claims can fairly be said to constitute the "same case or controversy."

This is true because the state law counterclaims fail to satisfy the four tests customarily employed for determining whether counterclaims are "compulsory" or "permissive." The issues of fact and law raised by the main

claim and counterclaims are not largely the same. The doctrine of res judicata would not bar a subsequent suit on the counterclaims absent the compulsory counterclaim rule. Substantially the same evidence will not support or refute Plaintiffs' claim as well as Defendants' counterclaims. There is an insufficient logical relationship between the jurisdictionally sufficient claim and the counterclaims.

## B. Discretion

■ *Gibbs* recognized that even if a federal court has subject matter jurisdiction to hear a state law claim, it does not mean the court should do so. 383 U.S. at 726–27, 86 S.Ct. at 1139–40. As noted earlier, *Gibbs* outlined various circumstances when a trial court should decline to exercise the federal power it possesses. *Id.*

Section 1367(c) codified the discretionary power of a federal trial court to refuse to hear state law claims. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523, at 47 (Supp.1996) (footnotes omitted). Such discretion does not mean, however, that a federal trial court can simply refuse to hear a state law claim. On the contrary, the statute requires the court (it uses the word "shall") to hear the claim if it has the power to do so under section 1367(a) unless the criteria set forth in section 1367(c) exist in the case before it. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3567.1, at 24 (Supp.1996).

Armed with this understanding, I turn now to the specific provisions of section 1367(c). Three of its four provisions counsel against hearing the counterclaims, and I shall examine those three provisions in the following portions of this memorandum.

### 1. Novel or Complex Issues of State Law

A district court may decline to exercise supplemental jurisdiction over a claim if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1) (1993). I do not believe the counterclaims in this case present "novel" issues of state law. However, the ASA counterclaim presents a "complex" question of state law regarding Montana's compulsory counterclaim rule. In addition, both counterclaims present "complex" state choice-of-law questions.

A Montana court ruled against Plaintiffs in their effort to dissolve ASA due to alleged improper registration of Risinger's bulls. There is no indication in the ruling dismissing the case that ASA presented its libel counterclaim in the Montana state court action. This is important because Montana has adopted a compulsory counterclaim rule nearly identical to the federal rule. Mont. R. Civ. P. 13(a) (1996) (WL, "Mt–Rules" database). The Montana rule provides that if a compulsory counterclaim is not lodged when required, the claim may be lost. *Id.*

If ASA's counterclaim is properly labeled "compulsory" under federal law, as a finding of supplemental jurisdiction presupposes, this court would be required to decide whether ASA's failure to assert the counterclaim in the now-concluded Montana action bars its counterclaim here under Montana law. *Springs v. First Nat'l Bank of Cut Bank,* 647 F.Supp. 1394, 1396 (D.Mont.1986) (whether the plaintiff's claim was a compulsory counterclaim that should have been pleaded in an earlier Montana state court action is a question of Montana state law), *aff'd,* 835 F.2d 1293 (9th Cir.1988).

Such an inquiry would require this court to conduct a searching examination of the Montana pleadings and perhaps the evidence to determine whether the counterclaim presented by ASA now was compulsory under Montana Rule 13(a) as far as the Montana litigation was concerned. If the counterclaim was found to be compulsory under Montana Rule 13(a), this court would then be required to decide whether there was some reason to excuse the failure to file the counterclaim under Montana Rules 13(e) (counterclaims maturing or acquired after pleading) or 13(f) (omitted counterclaims).

As this opinion reflects, determining whether counterclaims are "compulsory" is a "complex" task under federal law. A similar undertaking would be no easier under Montana law. *See Springs v. First Nat. Bank of Cut Bank,* 835 F.2d 1293, 1295–96 (9th Cir. 1988) (affirming district court's decision that

the failure to assert a negligence counterclaim in an earlier Montana state court foreclosure action precluded the assertion of the claim in federal court under Montana Rule 13(a)).

In addition, both counterclaims present three "complex" state choice of law questions. I shall discuss these three questions next.

First, the counterclaims present difficult choice of law questions involving the legal policies of at least six states. Deciding which substantive state law governs requires analysis of the parties' contacts with Nebraska, Montana, Texas, Iowa, Missouri, and Arkansas (the states where ASA, Risinger, and the counterclaim defendants reside or have their places of business), and this analysis in turn compels an examination of the legal policies of each of the six states. *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 312–13 (8th Cir.1991) (In diversity [7] cases, federal district courts must apply the law of the forum state regarding choice of law questions; in tort cases, Nebraska has adopted the "most significant relationship" approach of the *Restatement (Second) of Conflict of Laws* (1971); this approach requires analysis of the "relevant policies" of the "forum state" and "other interested states," such as those where the plaintiff and defendants reside or conduct business.) (applying *Restatement* §§ 6, 145). Examining the legal policies of six states is a difficult task under the best of circumstances.

Second, even before one examines the policies of the interested states, applying the specific choice of law rules for defamation actions under the *Restatement* is a complex task. Compare *Restatement (Second) of Conflict of Laws* § 149 (general rule is that place of publication dictates applicable law unless another state has a greater interest) *with* § 150 (for a multistate aggregate communication, the plaintiff's domicile, in case of a person, or principal location of the plaintiff's business, in case of a corporation, will provide applicable law unless another state has a greater interest). *See also Restatement* § 151 (Injurious Falsehood). Observe that if the publication is not an "aggregate communication," it is entirely "possible, particularly when the same communication is made to different persons in different states, that each communication by the defamer will be governed by a different law." *Id.* § 149, at 451 cmt. a.

Third, since Nebraska law does not permit punitive damages, *Enron*, 940 F.2d at 313, and other potentially interested states such as Texas [8] and Montana [9] apparently do, the counterclaims present additional choice of law complexity. This is true because if this court determined another state's substantive law applied, as both ASA and Risinger urge, the court would nevertheless be required to conduct another difficult inquiry to decide whether Nebraska's ban on punitive damages should be honored. *Id.* 940 F.2d at 313 & n. 10 (While Virgin Islands law generally applied, Nebraska's ban on punitive damages governed; however, the court observed that "[e]ach case must be determined on its own merits depending on the choice of law principles at issue.").

### 2. State Claims Substantially Predominate

If the claim supported by supplemental jurisdiction "substantially predominates over the claim or claims over which the district court has original jurisdiction," the court may decline to exercise jurisdiction. 28 U.S.C. § 1367(c)(2) (1993).

In determining whether state law claims "substantially predominate" over main claims, it is useful to examine *Gibbs* once more. The *Gibbs* court recognized that state law claims could so overwhelm trial of the

---

7. Although this is not a diversity case, *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), governs any situation in which a state law is to be applied by a federal court. 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4520, at 635 (2d ed.1996). Thus, *Erie* principles, like the one discussed in the text regarding use of the forum state's choice of law rules, are

properly applied to supplemental jurisdiction cases. *Id.* at 639 n. 11.

8. *See, e.g., Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 924–25 (Tex.Ct.App.1991).

9. *See, e.g., Gallagher v. Johnson*, 188 Mont. 117, 611 P.2d 613, 617–18 (1980).

claims supported by original jurisdiction that considerations of efficiency would no longer justify federal resolution of the state claims. The Court counseled trial judges to examine whether the state claims "predominated" as a matter of: (1) proof, (2) remedy, or (3) issues. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

Applying *Gibbs*, I find and conclude the state law counterclaims in this case "substantially predominate" over Plaintiffs' claims as to issues and proof for three reasons.

■ First, the counterclaims greatly increase the number of ultimate factual issues a jury must consider. Plaintiffs' claim boils down to the factual issue of whether the registration of Risinger's bulls on April 15, 1992, was proper. On the other hand, ASA's counterclaim alleges false statements were made in September, 1994, and January, 1995, and Risinger's counterclaim alleges false statements were made in February, April, July (or August), and September, 1994. Thus, the counterclaims present six additional ultimate factual issues for consideration by a jury compared to the one ultimate factual issue presented by the main claim.

Second, the counterclaims significantly increase the complexity of the legal issues. Plaintiffs have four theories of recovery with regard to the incident that occurred on April 15, 1992. Risinger has three theories of recovery regarding each of the four separate false statements alleged in his counterclaim, while ASA has one theory of recovery regarding each of the two false statements alleged in its counterclaim. Plaintiffs' four legal theories are entirely different from the three theories proposed by Risinger and the one proposed by ASA. Moreover, Risinger and ASA assert different legal theories under different state laws. Consequently, the counterclaims render the legal issues much more complex than they would have been absent the counterclaims.

Third, the counterclaims materially increase the amount of proof required to resolve this case. Plaintiffs' claim requires a jury to evaluate the conduct of four plaintiffs and two defendants regarding one incident. In contrast, when evaluating the counterclaims, a jury must evaluate the conduct not only of these six parties but also six more parties regarding six additional incidents. It is reasonable to assume each party will offer evidence. Since the number of parties has doubled and the number of ultimate factual issues increased by six, the proof required to try this case will increase dramatically as a result of the counterclaims.

### 3. Exceptional Circumstances

"[I]n exceptional circumstances" a court may decline to exercise jurisdiction when "there are compelling reasons" for doing so. 28 U.S.C. § 1367(c)(4). Risinger's counterclaim presents just such a circumstance.

Risinger has filed a suit in Texas state court very similar to his state law counterclaim here. (Filing 187, Ex. B.) Nine of the named counterclaim defendants are also named defendants in the pending Texas litigation. Given that Risinger has elected to seek state court redress, it would not serve the values of economy, convenience, fairness, and comity for this court to retain jurisdiction over Risinger's state law claim. *Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir.1992) (finding under section 1367(c)(4) that both "exceptional circumstances" and "compelling reasons" existed for the trial court to decline supplemental jurisdiction over identical claims pending in state court, and stating that federal resolution of the state claims "would be a pointless waste of judicial resources"); *Polaris Pool Sys. v. Letro Prods., Inc.*, 161 F.R.D. 422, 425 (C.D.Cal.1995) (noting that rejection of "supplemental jurisdiction" under section 1367(c)(4) "over these state law counterclaims in light of the pending state court action may further the 'values of economy, convenience, fairness and comity' ") (quoting *Gibbs*).

### 4. Summary

In sum, even if I have supplemental jurisdiction over the state law counterclaims, I should decline to exercise it. This result is compelled by 28 U.S.C. § 1367(c)(1), (2), and (4).

There are four reasons why the counterclaims raise "complex" questions of state law under section 1367(c)(1). Initially, ASA's

counterclaim raises complex issues of Montana law relating to compulsory counterclaims. Furthermore, both counterclaims raise complex state choice of law issues regarding (1) the legal policies of six states; (2) application of specific choice of law rules for defamation under the *Restatement (Second) of Conflict of Laws;* and (3) application of the forum state's ban on punitive damages.

Pursuant to section 1367(c)(2), there are three reasons why the state law counterclaims substantially predominate over the claims within this court's original jurisdiction. The counterclaims greatly increase (by six) the number of ultimate factual issues a jury must consider. The counterclaims also significantly increase the complexity of the legal issues by adding four different legal theories, under the laws of two different states, applying to six additional incidents. Moreover, the counterclaim theories are entirely unrelated to Plaintiffs' legal theories. Lastly, by doubling the number of parties who will present evidence and increasing the ultimate factual issues by six, the counterclaims materially increase the proof required to resolve this case.

Risinger's counterclaim presents an exceptional circumstance for declining jurisdiction under section 1367(c)(4) because Risinger has filed a lawsuit in Texas state court very similar to his state law counterclaim here. Thus, it would not serve the "values of economy, convenience, fairness and comity" for this court to exercise supplemental jurisdiction over the counterclaim in this case.

Accordingly,

IT IS ORDERED that:

(1) The motions to dismiss ASA's and Risinger's state law counterclaims (Filings 153, 154, 155, 158, 160, 161, 164, 167, 175) will be granted, and those counterclaims (Filings 92, 137) will be dismissed without prejudice;

(2) Judgment is deferred pending conclusion of the settlement conference now scheduled before United States Magistrate Judge David L. Piester.