Jean McKIMMIE, Plaintiff,

v.

AVCO FINANCIAL SERVICES COMPANY OF NEW YORK, INC., Defendant.

Civ-79-101.

United States District Court, W. D. New York.

Jan. 14, 1981.

Neighborhood Legal Services, Inc., Peter D. Braun, Buffalo, N. Y., of counsel, for plaintiff.

Silverberg, Yood, Sellers & Ramm, Sanford Silverberg and Julius M. Ramm, Buffalo, N. Y., of counsel, for defendant.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

This is an action brought pursuant to the Truth in Lending Act ("the Act"), 15 U.S.C. § 1601 *et seq.* and sections 352(d)(1), 352(e) and 353 of New York's Banking Law ("the Banking Law"). Plaintiff has moved for summary judgment.

In October 1977 AVCO Financial Services Company of New York, Inc. ("AVCO") made a consumer loan to plaintiff in the amount of $1,253.07. This loan was refinanced in July 1978 at which time the net balance owing was $1,160.53. AVCO disbursed an additional $68.57 to plaintiff, bringing the total amount of the refinancing to $1,229.10. The term of the new loan was three years and the finance charges were $448.89. AVCO provided plaintiff with a disclosure statement which contained a default charge and acceleration clause and which described the collateral for the new loan.[1]

Plaintiff made three payments totalling $150.96 for the months of September, October and November 1978. She commenced this action February 8, 1979. At about the same time, plaintiff also commenced an action against AVCO in the New York State Supreme Court based on alleged collection practices by AVCO in violation of New York's General Business Law § 601. AVCO has asserted a counterclaim against plain-

---

1. The default charge and acceleration clause reads:

    " * * * In the event of any default by the Borrower, including default in making any payment when due, Lender has the right to declare the full balance immediately due and payable and to bring a legal action to recover such balance. In the event the full balance is declared immediately due and payable, the Borrower will receive the same rebate of the unearned portion of the FINANCE CHARGE if the loan had been paid in full on the date the full balance is declared immediately due and payable."

    The section of the disclosure statement relevant to AVCO's security interest reads as follows. The date and check marks on the statement are handwritten.

"This loan is SECURED BY:

"x Security Agreement dated, 7–31–80 on:

"(a) x If checked at left, all household goods, furniture, appliances, and consumer goods of every kind and description owned at the time of the loan secured hereby, or at the time of any refinance or renewal thereof, or cash advanced under the loan agreement secured hereby, and located about the premises at the Debtor's residence (unless otherwise stated) or at any other location to which the goods may be moved.

"(b) ____ Motor vehicle(s) Together with all Tires, Batteries, Radios, Heaters, Equipment and Accessories now or hereafter attached thereto; * * *

"(c) ____ Other _____"

tiff for the sum of $1,551.00 in the state court action. Said sum represents the principal amount of the refinancing ($1,229.10) plus finance charges ($448.89) and miscellaneous charges ($23.97) less the total payments made ($150.96) by plaintiff thereon. The amount of AVCO's counterclaim does not reflect any rebate of unearned interest resulting from acceleration of the loan.[2]

Plaintiff alleges that the loan agreement failed to comply with the disclosure requirements of the Act and section 353 of the Banking Law.[3] Plaintiff also contends that AVCO's failure to rebate interest upon acceleration of the loan violates section 352(d)(1) of the Banking Law[4] and constitutes a taking of interest in excess of that permitted by section 352(e) of the Banking Law. I am dismissing the causes of action arising under the Banking Law and granting summary judgment for plaintiff on her claim under the Act.

A federal court is empowered to adjudicate a claim arising under state law without an independent jurisdictional basis when the state law claim is appended to a substantial federal claim and the state and federal claims "derive from a common nucleus of operative fact" and are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding * * *."[5] *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Nevertheless, the exercise of jurisdiction over pendent state claims is a matter of discretion. *Id.*, at 726, 86 S.Ct. at 1139. Considerations relevant to the exercise of such jurisdiction are judicial economy, convenience and fairness to litigants. *Id.* These interests would not be served by my retention of jurisdiction over plaintiff's claims under the Banking Law. Plaintiff's claims under sections 352(d)(1) and 352(e) involve the effect of AVCO's assertion of a counterclaim for more than an amount permitted by law in the state court action and can be more easily adjudicated as defenses to that counterclaim. Plaintiff's claim under section 353 of the Banking Law raises difficult questions of state law. New York courts have indicated that section 353 should be more strictly construed than federal truth in lending legislation because a violation of section 353 renders the underlying loan totally void.[6] *Public Loan Co., Inc. v. Hyde*, 63 A.D.2d 193, 406 N.Y.S.2d 907 (3rd Dep't 1978), *aff'd*, 47 N.Y.2d 182, 417 N.Y.S.2d 238 (1979). In the absence of firm guidance from New York's courts as to the applica-

2. The date on which the loan was accelerated is unclear. However, AVCO's counterclaim in state court seeks $1,551 plus interest from December 12, 1978. It therefore appears that December 12, 1978 is the date of acceleration.

3. Section 353 incorporates the Act by reference. It requires lenders to disclose "all items required to be disclosed by the Act of Congress entitled 'Truth in Lending Act' and the regulations thereunder, as such act and regulations may from time to time be amended (footnote omitted)."

4. Section 352(d)(1) provides:
   "If the loan contract is prepaid in full by cash, a new loan, refinancing or otherwise before the final installment date, the borrower shall receive a refund of an amount which shall be at least as great a proportion of the precomputed interest, excluding any adjustment of interest for a first period of more or less than one month, as the sum of the remaining monthly balances of principal and interest combined scheduled to follow the installment date nearest the date of prepayment bears to the sum of all monthly balances of principal and interest combined

originally scheduled by the contract. * * * In the event (i) the maturity of the loan is accelerated due to the default of the borrower or otherwise and judgment is obtained * * the borrower * * * shall be entitled to the same refund as if the loan had been prepaid in full on the date of acceleration * * *."

5. It is not clear to me that plaintiff's truth in lending claims and her claims under sections 352(d)(1) and 352(e) derive from a common nucleus of operative fact. The truth in lending claims arise out of AVCO's alleged failure to properly disclose the terms and conditions of the loan agreement. The claims based on sections 352(d)(1) and 352(e) derive from AVCO's alleged attempts to collect an unauthorized and illegal amount on the loan.

6. Section 358 of the Banking Law provides that a lender who violates section 353 shall be guilty of a misdemeanor. Section 358 further provides that, if a misdemeanor has been committed in connection with the making of a loan, the lender has no right to receive or collect any principal, interest or charges on the loan.

tion of section 353, I am reluctant to exercise jurisdiction over plaintiff's claim thereunder.[7]

■ My exercise of jurisdiction over plaintiff's state law claims would be particularly inappropriate in view of the already pending action in state court. *Washington v. Rothenberg*, 436 F.Supp. 699 (E.D.Va. 1977). Federal truth in lending legislation was not intended to bring about wholesale federal review of debtor-creditor relations. *Ball v. Connecticut Bank and Trust Co.*, 404 F.Supp. 1, 2–3 (D.Conn.1975). Moreover, routine exercise of jurisdiction over state claims pendent to claims under the Act would constitute an undue burden on federal courts. *Copley v. Rona Enterprises, Inc.*, 423 F.Supp. 979, 984–5 (S.D.Ohio 1976); *Solevo v. Aldens*, 395 F.Supp. 861, 863 (D.Conn.1975). Therefore, I hereby ORDER that plaintiff's second, third and fourth causes of action, arising under sections 353, 352(e) and 352(d)(1), respectively, of the Banking Law are dismissed without prejudice.

Plaintiff's claim under the Act is based on several alleged deficiencies in the disclosure statement provided to her in July 1978.

■ The Act and its implementing regulation require clear description of the nature of a creditor's security interest and the property to which the security interest relates. 15 U.S.C. § 1639(a)(8); 12 C.F.R. § 226.8(b)(5). AVCO's failure to comply with this requirement is said to be threefold. First, plaintiff argues that the security agreement contains an "after-acquired property" clause. Under New York's Uniform Commercial Code § 9–204(2), a securi-

ty interest does not attach to consumer goods under such a clause unless the debtor acquires rights in the goods within ten days after the creditor has given value. Plaintiff suggests that AVCO's failure to disclose this limitation renders the disclosure statement inadequate. Second, plaintiff argues that the disclosure statement was misleading because it implied that goods belonging to persons other than plaintiff might be subject to AVCO's security interest. Finally, plaintiff contends that the disclosure statement is ambiguous whether motor vehicle(s) were included within AVCO's security interest.

■ A creditor's failure to disclose the U.C.C.'s ten-day limitation on security interests in after-acquired consumer goods violates the Act. *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368 (5th Cir. 1979); *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976); *Public Loan Co., Inc. v. Hyde, supra*. The present case raises the question whether a clause granting a creditor a security interest in consumer goods owned by the debtor at the time of the loan "or at the time of any refinance or renewal thereof" constitutes an "after-acquired property clause" subject to the ten-day limitation imposed by U.C.C. § 9–204(2). This question was addressed in *Brooks v. AVCO Financial Services of Barre, Inc., unreported opinion* (CIV–77–263, D.Vt.1979), where the court held that a clause identical to the one involved herein failed to comply with the disclosure requirements of the Act.[8]

---

**7.** In *Perry v. Beneficial Finance Co. of New York, Inc.*, 81 F.R.D. 490 (W.D.N.Y.1979), the plaintiff therein commenced an action on behalf of herself and all other persons similarly situated under the Act and section 353. I certified the action as a class action under the Act but not under section 353. Unlike the defendant in this action, the defendant in *Perry* did not challenge the court's jurisdiction over the plaintiff's individual claim under section 353. Furthermore, there was no parallel state court action already pending in *Perry* which would have allowed for more convenient determination of the section 353 claim.

**8.** Citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645 (1979), plaintiff argues that the defendant AVCO of New York is collaterally estopped from denying the inadequacy of its disclosures under the Act by the result in *Brooks*. In her memorandum of law in support of the motion for summary judgment, plaintiff states that AVCO of Barre and AVCO of New York are subsidiaries of AVCO Financial Services, Inc., and argues that *Brooks* is binding on both. The record does not contain any evidence regarding the relationship between AVCO of New York and AVCO of Barre and does not provide any factual basis for adhering to plaintiff's collateral estoppel theory.

■ The *Brooks* court noted that the debtor could refinance or renew the original loan at any time and that, under the terms of the after-acquired property clause, any property held by the borrower at the time of the refinancing or renewal would be subject to the creditor's security interest. The court reasoned that, because refinancing or renewal could occur without any new giving of value,[9] the clause purported to grant the creditor a security interest in consumer goods acquired more than ten days after "the first and only giving of value." Such a result would clearly be contrary to U.C.C. § 9–204, and the court therefore concluded that the after-acquired property clause was misleading. I do not believe that refinancing or renewal of a loan may take place without the creditor "giving value" and decline to follow the reasoning of the *Brooks* court. Under the U.C.C., a person gives value for rights if, *inter alia,* he acquires them "in return for any consideration sufficient to support a simple contract." U.C.C. § 1–201(44)(d). A valid refinancing or renewal of an existing loan must be supported by consideration from both the debtor and the creditor. Therefore, the clause at issue herein does not grant AVCO a security interest in consumer goods acquired more than ten days after AVCO has given value and does not purport to grant a security interest greater than that permitted under U.C.C. § 9–204(2). Thus, AVCO's failure to disclose the ten-day limitation imposed by section 9–204(2) is not misleading and does not constitute a violation of the Act.

■ Plaintiff's argument that the disclosure statement implies that goods belonging to other persons might be subject to AVCO's security interest is also without merit. *Tinsman v. Moline Beneficial Finance Co., supra,* 531 F.2d at 818–9, held that a clause granting the creditor a security interest in consumer goods "now owned or hereafter located" at the debtor's resi-dence purported to create a security interest in all of the consumer goods located at the debtor's residence regardless of who owns the goods. Such a result would be contrary to U.C.C. § 9–203(1)(c) and the clause was therefore misleading. In the present case, however, the disclosure statement grants AVCO a security interest in consumer goods "owned at the time of the loan * * * and located about the premises at the debtor's residence (unless otherwise stated) or at any other location to which the goods may be moved." The disclosure statement does not purport to create a security interest in all consumer goods located at the debtor's residence regardless of who owns the goods. Rather, the goods must be owned by the debtor and located at his residence at the time the loan is made.

Plaintiff's final contention with respect to the description of AVCO's security interest is that the disclosure statement treats motor vehicles ambiguously. The disclosure statement identifies "consumer goods of every kind and description" as one type of collateral and "motor vehicle(s)" as another type of collateral. The court in *Brooks v. AVCO Financial Services of Barre, supra,* as an alternative to its holding discussed above, found that such a clause created confusion whether a security interest in "consumer goods" also included a security interest in the debtor's "motor vehicle." As the court noted:

"* * * motor vehicles are included within the U.C.C.'s definition of 'consumer goods,' [U.C.C. § 9–209(1)], and could well be included in the lay person's understanding of 'consumer goods.' Thus, the loan agreement does not make clear whether or not one who agrees to have one's 'consumer goods' attached, but who does not specifically agree to have one's 'motor vehicle' attached, is agreeing to a security interest in the family motor vehicle." *Brooks v. AVCO Financial Services of Barre, supra,* opinion at 3–4.

9. In a footnote, the court stated:

"The loan agreement does not specify whether or not new value will be given by the secured party at the time of the refinance or renewal. There is no reason to believe that additional value would be given by the secured party at the time of the refinance or renewal. One would expect only that the debtor would have to provide consideration for the refinancing or renewal." *Brooks v. AVCO Financial Services of Barre, supra,* at ii, n.5.

A borrower might believe that the "consumer goods" section of the agreement does not apply to motor vehicles at all. On the other hand, one could construe the "motor vehicles" section as applying only to motor vehicles and the "consumer goods" section as applying to motor vehicles and all other consumer goods. *Brooks v. AVCO Financial Services of Barre, Inc., supra,* opinion at 4. *See, also, Sneed v. Beneficial Finance Co. of Hawaii,* 410 F.Supp. 1135, 1144–5 (D.Haw.1976).

▮ I find the disclosure statement confusing for another reason. The "consumer goods" clause states that it is effective only "if checked at left." The "motor vehicles" clause and clauses relating to other types of collateral contain no similar operative language. It therefore appears that a borrower might believe that a check mark to the left of the consumer goods clause also creates a security interest in the borrower's motor vehicle. Alternatively, the borrower might think that the lender has a security interest in his motor vehicle whether or not any box has been checked.

▮ Plaintiff has advanced one other argument relative to the adequacy of the disclosure statement. She suggests that AVCO's assertion of a counterclaim in the state court action for $1,551 constitutes a failure to rebate unearned interest upon acceleration and that AVCO should have disclosed that it would not rebate unearned interest. It appears that this contention is not based on AVCO's failure to comply with the Act but, rather, on AVCO's breach of the loan agreement. The disclosure statement provides that unearned interest will be rebated upon acceleration of the loan.[10] AVCO's failure to comply with the terms of the disclosure statement may provide a defense to AVCO's state court counterclaim but does not give rise to a violation of the Act.[11]

I conclude that AVCO violated the Act because the disclosure statement was not clear whether motor vehicle(s) were included within the security interest granted by plaintiff. Therefore, I hereby ORDER that summary judgment shall be granted in favor of plaintiff on her first cause of action.

Plaintiff shall be entitled to judgment in the amount of $897.78, which sum is twice the amount of the finance charge incurred by plaintiff in connection with the transaction. Plaintiff may also be entitled to recover the costs of this action, including reasonable attorney's fees. 15 U.S.C. § 1640(a)(3). Plaintiff's attorney may file a notice of motion for recovery of costs and attorney's fees within three weeks after entry of this order. Such notice of motion shall be fully supported by appropriate affidavits.

---

10. See note 1, *supra.*

11. A creditor's failure to comply with the terms of the disclosure statement might constitute a violation of the Act if such failure was part of a deliberate practice by the creditor to breach its

loan agreements. In such case, the disclosure statement would be fraudulent. However, it appears that AVCO asserted a counterclaim against plaintiff for $1,551 through mere inadvertence, and not through any scheme to defraud.