Jessica **CABRERA**, Plaintiff,

v.

**COURTESY AUTO, INC., a/k/a Courtesy Auto Sales, Inc.; Courtesy Motors Acceptance Corp., a/k/a CMAC, Inc.; and Hollywood Auto Sales, Inc., Defendants.**

**No. 4:01CV82.**

United States District Court, D. Nebraska.

March 22, 2002.

Pamela A. Car, Omaha, NE, for plaintiff.

Brian J. Muench, James R. Welsh, Omaha, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the plaintiff's motion (filing 57) to strike or dismiss the counterclaim of the defendant Courtesy Motors Acceptance Corporation.[1] The motion will be denied.

Based upon my review of the pleadings, however, I will *sua sponte* dismiss without prejudice all state-law claims, counterclaims, and cross-claims, pursuant to 28 U.S.C. § 1367(c)(2), and will treat the matter as if cross-motions for summary judgment have been filed on the plaintiff's federal-law claim. The parties will be

---

1. Also before the court is the plaintiff's motion for leave to submit a reply brief (filing 64), which will be granted *instanter*.

provided a reasonable opportunity to file such additional evidence as they deem relevant to this claim, and to submit concurrent briefs for the court's consideration. I will also remove the case from the trial docket for the week of May 21, 2002.

## I. BACKGROUND

The plaintiff, Jessica Cabrera ("Cabrera"), allegedly is a resident of Omaha, Nebraska, and the defendants, Courtesy Auto, Inc. ("Courtesy"), Courtesy Motors Acceptance Corporation ("CMAC"), and Hollywood Auto Sales, Inc. ("Hollywood"), are all Nebraska corporations doing business in Omaha. It appears that Cabrera purchased a 1993 Buick from Hollywood in February 1999, the contract for which was subsequently assigned by Hollywood to CMAC, and that she also purchased a 1991 Pontiac from Courtesy in August 2000, which was financed by CMAC. The relationship between Courtesy and CMAC is not specified in the pleadings.

Cabrera alleges that she attempted to revoke acceptance of the Pontiac because of immediate mechanical problems, but that Courtesy refused; that when she took the Pontiac to Courtesy for repairs in September 2000, she was forced to refinance the loan with CMAC to include the cost of repairs; and that "shortly thereafter," when she attempted to make a payment on the loan, Courtesy repossessed the Pontiac. Cabrera further alleges that Courtesy seized the Pontiac, in part, because of a claimed default in payment of one or more installments on the Buick contract. Cabrera disputes that there was a valid security interest in the Pontiac under the Buick contract, and also claims that she returned the Buick to Courtesy or CMAC in satisfaction of her payment obligation.

In her original complaint, which was filed on February 14, 2001 (filing 1), Cabrera asserted a claim against all of the defendants for violation of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, with respect to the sale of both vehicles, and four state-law claims against all defendants for wrongful conversion of both vehicles, breach of the Pontiac contract, failure to comply with Article 9 of the Uniform Commercial Code ("UCC") in repossessing the Pontiac, and fraud as to both transactions. Hollywood answered the complaint (filing 6), while Courtesy and CMAC each filed a Rule 12(e) motion (filings 7, 8). Pursuant to a stipulation of the parties (filing 10), Cabrera was granted leave (filing 11) to file an amended complaint which would identify the role played by each defendant as to each claim.

In the amended complaint, filed on May 10, 2001 (filing 13), Cabrera limited the TILA claim to CMAC and Hollywood, limited the breach-of-contract and UCC claims to CMAC and Courtesy, and, while making claim against all defendants for conversion and fraud, apparently limited the allegations of wrongdoing on such claims to CMAC and Courtesy. Also, as amended, the conversion claim pertained only to the repossession of the Pontiac. The defendants filed separate answers to the amended complaint (filings 16, 29, 30).

On August 2, 2001, pursuant to Fed. R.Civ.P. 15(a), Cabrera filed a motion (filing 43) for leave to file a second amended complaint, based upon newly-discovered evidence, to add a claim against CMAC and Hollywood for wrongful conversion of the down payment and any other payments that were made on the Buick purchase. The motion was granted (filing 45), and the second amended complaint was subsequently filed and served on the defendants, on August 13, 2001 (filing 47). In the additional claim for conversion, Cabrera alleged that she did not sign the Buick purchase agreement. The allegations in support of her other claims appear to be unchanged from the first amended complaint.

On October 18, 2001, by means of a joint pleading (filing 54), Courtesy filed an amended answer which responded only to the allegations of the first amended complaint, while CMAC filed a counterclaim against Cabrera and a cross-claim against Hollywood. In the counterclaim, CMAC alleges that the Pontiac was sold on September 14, 2001, and it claims that Cabrera owes a deficiency loan balance of $5,419.37 plus interest from that date. In the cross-claim, CMAC alleges that it entered into an agreement with Hollywood on August 17, 1998, to purchase various receivables from Hollywood, including an outstanding account for Cabrera, and that Hollywood subsequently breached the agreement by selling two additional vehicles to Cabrera (including the Buick, presumably). CMAC further alleges that Hollywood tortiously interfered with the contractual relationship between Cabrera and CMAC. Hollywood filed an answer to Cabrera's second amended complaint on January 8, 2002 (filing 66), but has not responded to the cross-claim.

## II. DISCUSSION

Cabrera's pending motion (filing 57), which was filed on November 13, 2001, seeks to strike CMAC's counterclaim for failure to obtain permission for its filing under Fed.R.Civ.P. 13(e), or, alternatively, to dismiss the counterclaim for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). I will first consider the motion to strike, which I construe as being filed pursuant to Fed.R.Civ.P. 12(f), and then consider the alternative of dismissal. This discussion will lead to the conclusion that regardless of whether the counterclaim is subject to being stricken for procedural reasons or to being dismissed on jurisdictional grounds, only the plaintiff's federal-law claim should be determined in federal court, and that such claim appears ripe for determination by means of summary judgment.

### A. Plaintiff's Motion to Strike Counterclaim

Cabrera essentially argues that CMAC's counterclaim should be stricken as an impermissible supplemental pleading because it pertains to events that transpired after the last event that was alleged in her original complaint (i.e., the seizure of the Pontiac in or around September 2000). This argument, while consistent with Cabrera's jurisdictional argument that the counterclaim does not arise out of the same transaction or occurrence as her TILA claim, misapprehends the operation of Rule 13(e).[2]

■ Without regard to the allegations of Cabrera's complaint, Rule 13(e) would apply only if CMAC's counterclaim matured or was acquired by CMAC after its answer was filed on June 7, 2001 (filing 30).[3] Maturity of a claim is synonymous with accrual; that is, the point from which a statute of limitations would run. *Keller Medical Specialties Products v. Armstrong Medical Industries, Inc.,* No. 91 C 4853, 1992 WL 390733 at *3 (N.D.Ill. Dec.15, 1992).

The parties have not briefed this issue, but Cabrera seems to contend that the claim did not come into existence—in other words, the deficiency did not arise—until the Pontiac was sold on September 14, 2001. If this contention is correct, then Rule 13(e) does indeed apply. If, however,

---

**2.** Rule 13(e) provides: "A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

**3.** The answer was not timely filed under Fed.R.Civ.P. 15(a), but for purposes of this analysis I will disregard this fact as unimportant.

the claim accrued at an earlier date, such as when Cabrera first defaulted on a loan payment, or when CMAC exercised an option to accelerate the entire indebtedness, and if such date was on or before June 7, 2001,[4] then Rule 13(e) would have no application and the issue instead would become whether CMAC should be permitted to set up an omitted counterclaim under Fed. R.Civ.P. 13(f).[5]

The Nebraska Supreme Court also does not appear to have addressed this particular statute of limitations issue, but the majority rule, at least where a retail installment contract is involved, is that "[t]he statute of limitations begins to run on deficiency liability from the date when the debt of the buyer became due and not from the date of the sale of the collateral, which merely determined the amount of the balance not yet paid." 68A Am.Jur.2d, *Secured Transactions*, § 700 (1993). *See, also,* 9 Pike & Fisher, Inc., *Uniform Commercial Code Case Digest,* ¶ 9504.40 (1997)

(collecting cases). Assuming that this rule would also apply where, as here, the security interest is given in connection with a promissory note rather than a retail installment contract,[6] and further assuming that the outcome of these cases would not be affected by the 1999 revision to UCC Article 9 (which became operative in Nebraska on July 1, 2001, *see* Neb.Rev.Stat. Ann. U.C.C. § 9–701 (Lexis 2000)),[7] it seems likely that the Nebraska Supreme Court would hold that CMAC's claim for a deficiency judgment matured when it opted to accelerate the debt, whenever that may have been.

Without knowing for certain whether CMAC's counterclaim is an amended pleading under Rule 13(f) or a supplemental pleading under Rule 13(e), I could give CMAC the benefit of the doubt and accept its argument that the pleading is a compulsory counterclaim under Fed.R.Civ.P. 13(a),[8] rather than a permissive counterclaim under Fed.R.Civ.P. 13(b).[9] Although

4. Although the pleadings fail to specify when Cabrera first defaulted on the Pontiac loan, it does not appear that she made any monthly payments after the vehicle was repossessed. According to the counterclaim, Cabrera voluntarily surrendered the Pontiac to CMAC on December 28, 2000. The counterclaim also alleges that CMAC gave Cabrera notice of sale, advising that the proceeds would be applied against the balance of the loan, but the date of such notice is not stated.

5. Rule 13(f) provides: "When a pleader fails to set up a counterclaim, through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."

6. The majority of courts in this situation have applied the four-year statute of limitations for breach of a sales contract, as provided in UCC § 2–725. Where the secured transaction is a promissory note, the applicable statute of limitations instead may be UCC § 3–118(a), which provides, subject to certain exceptions, that "an action to enforce the obli-

gation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

7. "Prior to 1999 almost all of the important rules on resales and deficiencies were contained in section 9–504. Those rules now appear in half a dozen sections of Article 9." James J. White & Robert S. Summers, *Uniform Commercial Code, 1999 Article 9 Supplement,* § 25–10, at 226 (2000).

8. Rule 13(a) provides, in part: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. . . ."

9. Rule 13(b) provides: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

CMAC in its brief has only discussed whether its claim for a deficiency judgment "arises out of the same transaction or occurrence" as the plaintiff's TILA claim, by inference it is also asserting that it had the claim "at the time of serving the [answer]." In other words, CMAC appears to be taking the position that it should be permitted to set up an omitted Rule 13(a) counterclaim under Rule 13(f). This, in any event, would be CMAC's strongest argument for having the claim heard in this action, since it might be precluded from asserting the claim in a later independent action. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1430, at 223 (2d ed. 1990) ("[W]hen the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader will lose the opportunity to have the claim adjudicated.").[10] *See, also, Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 594 (8th Cir.1988) ("Leave to amend to plead an omitted counterclaim should be freely granted, es-pecially when the omitted counterclaim is a compulsory counterclaim, ....") (citing treatise).

The difficulty with this position, and the basis for Cabrera's motion to strike (albeit, made with reference to Rule 13(e)), is that CMAC did not obtain the court's permission before filing the counterclaim. In and of itself, this failure to adhere to the requirements of Rule 13(f) does not mandate the striking of the counterclaim. Because the rule does not impose any time requirements for requesting leave to amend, and because of the liberal policy of allowing amended pleadings to be filed in federal court, *see* Fed.R.Civ.P. 15(a), it would be permissible for the court to determine at this time whether leave should be granted despite CMAC's failure to obtain prior approval.[11] Under this approach, the court would focus primarily upon whether Cabrera would be unduly prejudiced by the late filing. *See Mercantile Trust Co. Nat. Ass'n v. Inland Marine Products Corp.*, 542 F.2d 1010, 1012 n. 5 (8th Cir.1976) ("[T]he same liberal standards for consideration [as enunciated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (*i.e.*, that leave to amend should be freely

---

**10.** Although Rule 13(e) technically does not apply to compulsory counterclaims, the authorities indicate that a Rule 13(e) supplemental counterclaim should be treated as compulsory for jurisdictional purposes if it arises out of the same transaction as the original claim. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1429, at 212 (2d ed.1990); 3 James Wm. Moore, *Moore's Federal Practice*, §§ 13.42, 13.110[1][d] (3d ed.2001). That is to say, a federal court should be able to exercise jurisdiction over an after-acquired claim in order to avoid piecemeal litigation. Possible prejudice to the pleader in being unable to assert the claim in a subsequent action is not a consideration, however.

**11.** "In general, if an amendment that cannot be made as of right is served without obtain-ing the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval. However, some courts have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change. Permitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of Rule 15(a) and the general desirability of minimizing need formalities." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1484, at 601–02 (2d ed.1990) (footnotes omitted).

given '[i]n the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.')] would seem to apply under Rule 13 or under Rule 15.").

"As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order 'shall not be modified except upon a showing of good cause and by leave of the district judge.' Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).

In this case, the court's scheduling order (filing 14, ¶ 6) required "any motion to amend pleadings" to be filed within 90 days after May 14, 2001. If, as seems likely, CMAC's claim for a deficiency judgment is an omitted counterclaim under Rule 13(f), it was required to file a motion for leave to amend on or before August 13, 2001. CMAC did not do so, and, in fact, did not file its counterclaim until more than two months after that deadline, on October 18, 2001.

■ When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order. *In re Milk Products Antitrust Litigation*, 195 F.3d 430, 437 (8th Cir.1999), cert. denied, 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000). CMAC, in responding to Cabrera's motion to strike, has not offered an explanation or attempted to make a showing of good cause to excuse its apparent noncompliance with the scheduling order.[12]

I say "apparent" noncompliance because if, as contended by Cabrera, the counterclaim in fact is a supplemental pleading under Rule 13(e), then the scheduling order deadline would not strictly apply.[13] This would eliminate the need for a "good cause" showing by CMAC under Rule 16(b), and effectively shift the burden to Cabrera to demonstrate that she would be prejudiced by the late filing.

■ While Cabrera asserts in her motion that "the parties have already commenced Discovery and one Depositions (sic) has been taken and others are set and the allowance of this counterclaim would unduly delay the proceedings," this is not a satisfactory showing. Mere delay is not a reason for the court to deny leave to file a supplemental pleading. *See Mercantile Trust*, 542 F.2d at 1012 (stating rule with reference to denying leave to amend). Allowing the counterclaim would no doubt extend the duration of the trial somewhat—it may be anticipated that Cabrera, if required to answer the counterclaim, would raise numerous defenses regarding

---

12. "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). '[T]he existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision. *Id.*" *Bradford*, 249 F.3d at 809. If the first criterion is not satisfied, there is no need to consider prejudice to the opposing party or other factors. *See id.*

13. The language of the scheduling order is in compliance with Fed.R.Civ.P. 16(b)(1), which permits the court to limit the time "to amend the pleadings."

the sufficiency of the Pontiac resale and of the notices related thereto—but it is not apparent that the trial would need to be continued or any additional discovery undertaken.[14]

Consequently, while I do not condone CMAC's unexplained failure to obtain leave of court before filing the counterclaim (and the cross-claim, as well),[15] I am reluctant to strike the pleading when there are numerous unanswered questions regarding the status of the deficiency claim. That being said, I will turn to an examination of Cabrera's alternative motion to dismiss.

## B. Plaintiff's Motion to Dismiss Counterclaim

Cabrera contends that the court in any event does not have subject matter jurisdiction over CMAC's counterclaim because it is permissive and it could not be maintained as a separate action in federal court. As discussed above, CMAC disputes this contention by asserting that the counterclaim is compulsory.

█ Because permissive counterclaims by definition do not arise from the same transaction or occurrence as the main claim, in most cases a court will not have supplemental jurisdiction over the counterclaim. 3 James Wm. Moore, *Moore's Federal Practice,* § 13.110[2] (3d ed.2001). Thus, the federal courts consistently hold that a Rule 13(b) counterclaim must be supported by independent grounds of federal jurisdiction. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1422, at 170 (2d ed.1990). *See, also,*

*Blue Dane Simmental v. American Simmental Ass'n,* 952 F.Supp. 1399, 1403 (D.Neb.1997) (citing treatise).

There is a split among the circuits on the question of whether in a TILA action a counterclaim on the underlying debt is compulsory or permissive. The Fourth, Sixth, and Seventh Circuits hold that a debt counterclaim is permissive, while the Fifth and Eleventh Circuits hold that it is compulsory. *See Whigham v. Beneficial Finance Co. of Fayetteville,* 599 F.2d 1322, 1323 (4th Cir.1979); *Maddox v. Kentucky Finance Co., Inc.,* 736 F.2d 380, 384 (6th Cir.1984); *Valencia v. Anderson Brothers Ford,* 617 F.2d 1278, 1292 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981); *Plant v. Blazer Financial Services, Inc. of Georgia,* 598 F.2d 1357, 1363 (5th Cir.1979); *Heaven v. Trust Co. Bank,* 118 F.3d 735, 738 (11th Cir.1997).

As noted by the Fourth Circuit, there are several reasons for concluding that a lender's counterclaim does not belong in a TILA action that is brought in federal court, at least not without an independent jurisdictional basis:

First, the lender's counterclaim raises issues of fact and law significantly different from those presented by the borrower's claim. The only question in the borrower's suit is whether the lender made disclosures required by the federal statute and its implementing regulations. The lender's counterclaim, on the other hand, requires the court to determine the contractual rights of the parties in accordance with state law.

14. At the time CMAC filed its counterclaim, trial was scheduled for April 15, 2002. (See filing 14.) On March 14, 2002, the parties, citing a need for additional discovery and also a scheduling conflict, requested a continuance, which was granted by the magistrate judge. (See filings 73, 74.)

15. CMAC's cross-claim against Hollywood clearly is an amended pleading under Rule 15(a), and its filing was a clear violation of the court's progression order. Inasmuch as Hollywood has not moved to strike the cross-claim (nor otherwise responded to it), I will ignore this violation for now.

Second, the evidence needed to support each claim differs. The borrower need produce only the loan documents for consideration in light of the federal requirements. The lender, however, must verify the obligation and prove a default on loan payments.

Third, the claim and the counterclaim are not logically related. The lender's counterclaim alleges simply that the borrower has defaulted on a private loan contract governed by state law. The borrower's federal claim involves the same loan, but it does not arise from the obligations created by the contractual transaction. Instead, the claim invokes a statutory penalty designed to enforce federal policy against inadequate disclosure by lenders. To let the lender use the federal proceedings as an opportunity to pursue private claims against the borrower would impede expeditious enforcement of the federal penalty and involve the district courts in debt collection matters having no federal significance.

*Whigham,* 599 F.2d at 1324 (internal citations and footnotes omitted). The Seventh Circuit summarized the matter as follows: "The sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document. A flexible application of the logical relationship test reveals that this connection is so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a)." *Valencia,* 617 F.2d at 1291.

■ The Eighth Circuit has expressed approval of the view that debt counterclaims are permissive in TILA actions, and has applied the reasoning of the *Whigham* and *Valencia* decisions to a claim brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. Peterson v. United Accounts, Inc.,* 638 F.2d 1134, 1136–37 (8th Cir.1981). Thus, I conclude that CMAC's counterclaim does not arise out of the same transaction or occurrence as Cabrera's TILA claim. *See, also, Jones v. Sonny Gerber Auto Sales, Inc.,* 71 F.R.D. 695 (D.Neb.1976) (dismissing seller's counterclaim for damage to repossessed automobile in TILA action).

Cabrera, however, has also asserted a number of state-law claims, including claims that Courtesy and CMAC breached the Pontiac contract and violated UCC Article 9 in repossessing the vehicle. Without going through each of the four tests [16] for determining whether CMAC's deficiency claim is sufficiently related to Cabrera's state-law claims to form part of the "same case or controversy," there would appear to be a close transactional relationship. Thus, CMAC's claim may be a Rule 13(a) compulsory counterclaim with respect to one or more of Cabrera's state-law claims, but a Rule 13(b) permissive counterclaim with respect to Cabrera's TILA claim. To use pre 1990 jurisdictional vernacular, CMAC's counterclaim may be "ancillary" to Cabrera's "pendent" claims.

■ The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), subject to certain exceptions that are not applicable here, now provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have sup-

---

**16.** As discussed in *Blue Dane,* 952 F.Supp. at 1408 (citing *Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 264 (8th Cir.1979)), the four tests are:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3) Will substantially the same evidence support or refute the plaintiff's claim as well as the defendant's counterclaim?

4) Is there any logical relationship between the claim and the counterclaim?

plemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." I understand this statute to confer jurisdiction upon a federal district court to hear all compulsory counterclaims in an action where it has original jurisdiction, and not just compulsory counterclaims that are related to claims within the court's original jurisdiction. *See Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) ("If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state court."); *Tullos v. Parks,* 915 F.2d 1192, 1194 (8th Cir.1990) (same). This assumes, of course, that the plaintiff's transactionally-related claims are properly before the court.

If CMAC's counterclaim for a deficiency judgment on the Pontiac loan does not arise out of the same transaction or occurrence as Cabrera's claim regarding CMAC's alleged failure to disclose federally-required information when making the loan, it is difficult to conclude that Cabrera's additional state-law claims for breach of contract, conversion, etc., involve the same case or controversy as her claim arising under federal law. In other words, I seriously question whether the court has supplemental jurisdiction over some or all of Cabrera's state-law claims.

▮▮▮ Federal courts are obligated to raise the issue of subject-matter jurisdiction *sua sponte. Crawford v. F. Hoff-*

man–La Roche Ltd., 267 F.3d 760, 764 n. 2 (8th Cir.2001) (citing *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978)). Furthermore, even if I find that supplemental jurisdiction exists, I have discretionary authority to decline to exercise jurisdiction where the state-law claims "substantially predominate" over the federal claim. 28 U.S.C. § 1367(c)(2). Other courts have thus elected to dismiss without prejudice state-law claims in TILA actions. *See, e.g., Rugumbwa v. Betten Motor Sales,* 200 F.R.D. 358, 368 (W.D.Mich.2001) (declining to exercise supplemental jurisdiction over six state-law claims); *Molenbeek v. West Michigan Auto & Truck Outlet, Inc.,* No. 1:00–CV–286, 2001 WL 1602654 at *6 (W.D.Mich. Mar.15, 2001) (declining to exercise supplemental jurisdiction over five state-law claims); *McKimmie v. Avco Financial Services Co. of New York, Inc.,* 504 F.Supp. 1286, 1290 (W.D.N.Y.1981) (noting that routine exercise of jurisdiction over state claims pendent to claims under the TILA would constitute an undue burden on federal courts). *Cf. Ball v. Connecticut Bank & Trust Co.,* 404 F.Supp. 1, 2 (D.Conn.1975) (dismissing plaintiff's state-law claim and defendant's counterclaim in TILA action for lack of subject matter jurisdiction).

▮▮▮ I likewise conclude that the state-law claims in this action substantially predominate over the TILA claim.[17] TILA claims are heard by the court without a jury and ordinarily involve only questions of law based on the face of the loan documents.[18] *Maddox,* 736 F.2d at 383. The

17. If state-law claims predominate as a matter of (1) proof, (2) remedy, or (3) issues, dismissal is appropriate. *See Blue Dane,* 952 F.Supp. at 1413 (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Suffice it to say that the state-law claims in this case predominate in all three areas.

18. There may, however, be a right to trial by jury on the issue of damages. *See Kobs v. Arrow Service Bureau, Inc.,* 134 F.3d 893, 898 (7th Cir.1998) (interpreting analogous damage provision in the FDCPA).

Act permits an award of any actual damage sustained as a result of the creditor's failure to comply with disclosure requirements,[19] or, for certain violations, statutory damages.[20] *See* 15 U.S.C. § 1640. Cabrera's state-law claims are not nearly so limited and will require completely different proof, to be presented to a jury. Her available remedies are also different. For example, Cabrera seeks to rescind both purchase contracts based upon various allegations of fraud (including that the Pontiac was worth less than the sales price, and was sold to Cabrera with the intention of repossessing it), to recover damages for loss of use of the Pontiac and other damages associated with the alleged wrongful conversion of the vehicle and breach of the sales agreement, and to recover statutory damages (of 10% of the debt) under former UCC § 9–507 for improper disposition of the Pontiac. CMAC's counterclaim for a deficiency judgment adds a host of other UCC issues to the lawsuit, and its cross-claim against Hollywood concerns a separate transaction. These claims have little in common with the alleged TILA violations.

Even though I have doubts that supplemental jurisdiction exists with respect to some or all of the state-law claims, their dismissal is permitted under section 1367(c). *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("[D]istrict courts do not overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendent jurisdiction, ....") (citing *Moor v. County of Alameda*, 411 U.S. 693, 715–716, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)). *See, also, Crawford v. F. Hoffman–La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir.2001) (discussing *Ruhrgas* ). Accordingly, I will dismiss the state-law claims without prejudice to their refiling in state court, and will only entertain Cabrera's federal-law claim against CMAC and Hollywood.[21]

### C. *Sua Sponte* Summary Judgment Motion

Examining the pleadings and the paperwork for the Pontiac loan, as attached to the second amended complaint (filing 47, exhibits A D), I am unable to discern a factual or legal basis for Cabrera's allegation that "CMAC fail[ed] to disclose the cash price of the vehicle as defined in [Regulation Z, 12 C.F.R. § 226.2] and fail[ed] to disclose the total sales price in violation of 15 U.S.C. § 1638(a)(8) and [Regulation Z, 12 C.F.R. § 226.18]." (Filing 47, ¶ 24.) Cabrera also alleges that CMAC and Hollywood "failed to properly identify and disclose a valid security interest in violation of the Truth in Lending Act." (Filing 47, ¶ 22.) Presumably, this allegation concerns a failure to specify, either in the Buick sales contract or in the Pontiac loan, that the Buick transaction would be secured by the after-acquired

---

19. To recover actual damages, the plaintiff must prove an injury or loss that was proximately caused by the TILA violation. *See Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir.2000). In order to show causation for nondisclosure of price terms, a plaintiff must prove that: (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price. *See id.*

20. Statutory damages (of twice the amount of the finance charge) apply to the failure to disclose a security interest under 15 U.S.C. § 1638(9), but not to the failure to disclose or explain the total sales price under 15 U.S.C. § 1638(7) or (8). *See* 15 U.S.C. § 1640(a). Cabrera has alleged both types of violations in this action.

21. At this time, however, I am *not* entering final judgment on the dismissed claims. *See* Fed.R.Civ.P. 54(b).

Pontiac. CMAC, however, has denied Cabrera's allegation that the Pontiac repossession was due to Cabrera's default on the Buick payments, and has alleged that both vehicles were repossessed because both loans were in default. (Filing 30, ¶¶ 1, 2.c.) If CMAC has not claimed a security interest in the Pontiac by virtue of the Buick installment sale, then I also fail to see a TILA violation in this regard.[22]

It is thus my impression that the TILA claim is lacking in substance, and that it has been asserted primarily for the purpose of invoking federal court jurisdiction. While this impression may prove to be mistaken, I am not going to conduct a trial if the merits of the claim can be determined in summary fashion. A pre-trial dismissal of the federal-law claim on the merits would also provide even more reason for my declining to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3) (permitting dismissal of claims where "the district court has dismissed all claims over which it has original jurisdiction").

 A court has inherent power to grant dispositive motions *sua sponte* "so long as the losing party was on notice that she had to come forward with all of her evidence." *McClure v. American Family Mut. Ins. Co.*, 223 F.3d 845, 856 (8th Cir. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *See, also, Lindsey v. Jewels by Park Lane, Inc.*, 205 F.3d 1087, 1094 (8th Cir.2000) ("[A] *sua sponte* grant of summary judgment is appropriate only when the party against whom judgment will be entered is given sufficient advance notice and an adequate opportunity to respond, unless the losing party has failed to state a claim.") (internal citations omitted).

While I wish to avoid an unnecessary trial, it is not my intention to prevent the plaintiff from making her case. She may have theories of liability that are not readily apparent from the allegations of the second amended complaint, or other evidence to support her claim, either of which could prevent summary judgment from being entered against her, or perhaps even result in summary judgment in her favor. Consequently, based upon the pleadings presented, I will treat the case as if it has been submitted to the court for resolution on cross-motions for summary judgment, and will allow the parties a period of thirty days in which to submit concurrent briefs and to file any evidence.[23] The case will be removed from the trial list and the final pretrial conference cancelled, subject to possible rescheduling at a later date should genuine issues of material fact remain for trial.

### III. CONCLUSION

For the reasons stated, I will deny the plaintiff's motion to strike or dismiss the defendant's counterclaim, but I will decline to exercise supplemental jurisdiction over all state-law claims, counterclaims, and cross-claims. On my own motion I will also treat the remaining TILA claim as if it were pending on cross-motions for summary judgment and will remove the case from the trial list.

Accordingly,

IT IS ORDERED that:

---

22. Cabrera's claim for this alleged TILA violation may also be barred by the one-year statute of limitations, 15 U.S.C. § 1640(e). The defendants, however, have not asserted this affirmative defense. *See* Fed.R.Civ.P. 8(c). *See, also, Evans v. Rudy–Luther Toyota, Inc.*, 39 F.Supp.2d 1177, 1182–84 (D.Minn.1999)

(holding, as matter of first impression in the Eighth Circuit, that TILA limitations period not jurisdictional).

23. The parties' evidentiary submissions should include authenticated copies of all documents that are at issue in the TILA claim.

1) Plaintiff's motion for leave to submit a reply brief (filing 64) is granted *instanter*;

2) Plaintiff's motion to strike or dismiss counterclaim (filing 57) is denied;

3) Pursuant to 28 U.S.C. § 1367(c)(2), and upon the court's own motion, all claims, counterclaims, and cross-claims alleged by the parties, except Plaintiff's federal Truth in Lending Act ("TILA") claim (designated as "first cause of action" of second amended complaint, filing 47, ¶¶ 19–24), are hereby dismissed without prejudice;

4) Also upon the court's own motion, this matter shall be treated as if pending on cross-motions for summary judgment on Plaintiff's TILA claim, and the parties shall each be allowed a period of thirty (30) days from today's date to deliver concurrent briefs to the undersigned and to file evidence with the clerk of the court pursuant to Fed.R.Civ.P. 56 and NELR 56.1, after which time the matter will be ripe for decision;

5) This matter is removed from the trial docket for the week of May 21, 2002, and the pretrial conference scheduled for April 30, 2002, is cancelled; and

6) All other provisions of the court's scheduling orders shall remain in effect, including the deposition deadline of April 16, 2002.